*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0131p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 99-2194

ERNESTO FRANCO,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 95-80248—John Corbett O'Meara, District Judge.

Argued: January 30, 2007

Decided and Filed: April 11, 2007

Before: MARTIN, BATCHELDER, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Margaret Amer Robey, ROBEY & ROBEY, Cleveland, Ohio, for Appellant. John C. Engstrom, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Margaret Amer Robey, Gregory S. Robey, ROBEY & ROBEY, Cleveland, Ohio, for Appellant. John C. Engstrom, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Defendant Ernesto Franco was convicted and sentenced for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, he challenges the district court's admission of "other acts" evidence introduced by the government to rebut his entrapment defense, as well as the district court's restriction of his cross-examination of a government witness. In addition, he claims that he received ineffective assistance of counsel based on two alleged errors by trial counsel. Franco also argues that his conviction and sentence must be reversed because (1) there was insufficient evidence to support a finding that he possessed with intent to distribute nine kilograms of cocaine, and (2) the jury did not determine the type and quantity of drugs he was found to possess with intent to distribute. Finally, he requests that he be resentenced pursuant to the Supreme Court's decision in *United States v. Booker.* For the

1

reasons below, we **AFFIRM** Franco's conviction, but **VACATE** his sentence and **REMAND** for the limited purpose of resentencing in light of *Booker*.

I

The events leading up to this case began in December 1994 when Julio Molineiro, a paid U.S. Customs informant in Texas, contacted Ronald Ramon, his supervising agent. Molineiro informed Agent Ramon that an acquaintance, Miguel Sanchez, had information that Ernesto Franco was interested in purchasing drugs. Shortly thereafter, agents from the Drug Enforcement Agency (DEA) and U.S. Customs Service interviewed Sanchez and Molineiro.

The investigating agents initiated a reverse sting operation.[1] Sanchez was instructed to call Franco and inform him that he was in Cincinnati with 30 kilograms of cocaine for sale. During a recorded phone conversation on January 10, 1995, Franco expressed interest in purchasing the cocaine and asked Sanchez to call him when he arrived in Detroit. Sanchez called from Detroit the following day, and over the next few days negotiations ensued and events unfolded according to plan. After meeting with Sanchez, Franco was introduced to Molineiro, who acted as the Bolivian owner of the cocaine, and Special Agent Albert Ornelas, who acted as Molineiro's associate and bodyguard. The parties scheduled a cocaine delivery to occur on January 13, 1995 in a room at the Taylor Inn. Officers set up surveillance beforehand in the room next door. However, after Franco arrived at the scene but prior to entering the hotel, he turned around and left. The next day, Franco called Molineiro and informed him that the reason he aborted the sale was because he observed someone he believed to be a police officer looking out the window of the adjacent room.

One month later, on his own initiative, Franco telephoned Molineiro and suggested that they meet in Michigan without Sanchez. During a videotaped meeting on February 22, 1995, Franco discussed his reasons for not carrying out the January 13 buy, noting that he had worked in the drug business for over twenty years and believed that the police were on to him. Franco and Molineiro recommended negotiations and agreed on a series of smaller deliveries of approximately 10 kilograms each. They scheduled the first delivery for March 23, 1995.

On March 23, federal agents set up surveillance at the Hometown Inn in Detroit. Franco arrived at a room occupied by Molineiro and Ornelas and was presented with a duffel bag containing one kilogram of real cocaine and eight kilograms of sham cocaine. Franco cut into the real kilogram of cocaine, put some to his face, and stated it was good. He advised Molineiro and Ornelas that he had to go home to retrieve the $40,000 payment for the drugs. Thirty minutes later, he returned with a box containing an amount just shy of the $40,000. He stated that he was going to transport the cocaine to a safe place and return with the remaining balance. As Franco left the hotel with the duffel bag in his possession, he was arrested.

On December 21, 1995, Franco was indicted on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On November 17, 1998, the government filed a superseding indictment containing identical allegations.

On May 28, 1999, following a four-day trial, a jury returned a guilty verdict. Franco was assigned a criminal history category of I (based on zero criminal history points) and a total offense level of 32, resulting in a Guidelines sentence range of 121 to 151 months. Because Franco was sentenced pre-*Booker*, the district court had no discretion to sentence Franco outside the applicable Guidelines range, and sentenced him to 136 months' imprisonment.

---

[1]In a traditional sting operation, an undercover agent seeks to purchase drugs from a suspect. In a reverse sting operation, an agent seeks to sell drugs to a suspect.

Franco appealed and briefs were submitted by both parties in April and May 2000. However, we dismissed his appeal on June 16, 2000 because Franco failed to file a joint appendix. His motion to reinstate was denied on March 15, 2001. On February 4, 2003, Franco filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255 in the district court. Although this motion was untimely, the district court equitably tolled the statute of limitations and addressed the merits of his case. Franco argued that his trial counsel was ineffective for failing to demand that the jury decide the quantity of drugs involved in Franco's offense. On January 27, 2004, the district court denied his petition, finding that counsel was not ineffective because Franco was convicted and sentenced prior to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). Franco did not appeal.

On July 14, 2005, Franco renewed his motion to open his underlying appeal, which we granted on November 15, 2005. His case comes before us in a unique procedural posture: Franco was convicted and sentenced before the Supreme Court's 2000 decision in *Apprendi*, but his case is on direct appeal after its 2005 decision in *Booker*, despite his having already brought a habeas petition before the district court.

II

Franco challenges the trial court's decision to allow Ornelas[2] and Molineiro to testify regarding Franco's involvement in prior drug trafficking crimes without first weighing the evidence under Fed. R. Evid. 403.[3] We review the district court's evidentiary ruling for abuse of discretion. *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled." *Id.* (quoting *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005)).

In 1997 (prior to the issuance of the superseding indictment), Franco filed a motion for discovery regarding any evidence the government would use to rebut his entrapment defense. Franco anticipated that this evidence would fall under Fed. R. Evid. 404(b), which provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial

---

[2]Ornelas testified that Franco discussed (1) using a pilot to fly cocaine from Texas to Michigan; (2) an occasion where a U.S. Customs agent showed up at Franco's home while he and an associate were counting money, prompting Franco to hide the money under the sofa; (3) a time when one of Franco's associates was caught with cocaine at a weigh station, but cooperated with authorities by using this cocaine to conduct a reverse sting operation; and (4) an occasion where after an associate's car caught on fire in Cincinnati, Franco traveled to that location, put the car on a trailer, brought it back to his home, and removed $300,000 from hidden compartments. Franco also notes that the trial court allowed a U.S. Customs agent to testify at trial that he visited Franco's home on an earlier occasion. Franco alleges that this was done in order to corroborate Ornelas's testimony that Franco had stated a customs agent had come to his home.

[3]Franco also challenges the fact that the district court allowed DEA Special Agent William Weinman to testify on redirect that Franco was a "known violator" who federal authorities were aware dealt drugs as far back as 1977. However, prior to its introduction, the trial court ruled that this "known violator" evidence was admissible for the limited purpose of rebutting defense counsel's efforts to discredit Weinman's attempts to verify information before litigation commenced. Therefore, we do not find that the district court abused its discretion in this instance.

notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

*See also United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1984) (noting that countering an entrapment defense with evidence of other crimes and wrongs in order to show criminal predisposition "is a permissible use of such evidence not explicitly referred to in Rule 404(b), but generally recognized"). Although Franco conceded that this evidence was admissible, he argued that the government did not comply with Rule 404(b)'s notice requirement. Although the government did not believe it was required to provide notice regarding such discovery, "out of an abundance of caution," it sent a letter outlining some of the information Franco requested. The content of this letter, which is unknown to us, apparently did not appease Franco. At a pretrial hearing, the district court denied Franco's motion, but noted that it would make a final determination at trial. Ultimately, this evidence was admitted at trial.

Franco still contends that this evidence falls under Rule 404(b), although the government maintains because this evidence was used for the purpose of showing conformity with his criminal character, it falls under Rule 404(a),[4] which provides, in pertinent part:

> Character evidence generally.--Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>> (1) Character of accused.--In a criminal case, evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same . . .

Notably, Rule 404(a) does not require the government to provide pretrial notice of the evidence it intends to introduce. *See United States v. Roper*, 135 F.3d 430, 434 (6th Cir. 1998) (stating that when the government submits evidence falling under Rule 404(a), it is "immunized" from Rule 404(b)'s notice requirement). Although Rule 404(a) character evidence is generally only admissible in the form of reputation or opinion, *see* Fed. R. Evid. 405(a), Rule 405(b) provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." Because predisposition is relevant to entrapment, such character evidence was an essential element of Franco's defense, and therefore, these specific instances of his conduct were admissible. *See Roper*, 135 F.3d at 434 ("When entrapment is raised as a defense, the criminal defendant makes his own character an essential trial issue. The government may therefore introduce proof of his prior wrongs.") (quoting *United States v. Manzella*, 782 F.2d 533, 546 (5th Cir. 1986) and citing Fed. R. Evid. 405(b)).

On appeal, Franco appears to have abandoned his argument based on notice. Instead, he primarily argues that the trial court abused its discretion by failing to weigh the probative value and prejudicial effect of the government's evidence under Fed. R. Evid. 403. Under Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Franco now accuses the government and trial court of simply proceeding on the assumption that

---

[4]The government argues that once Franco raised an entrapment defense, he put his character into issue, rendering inapplicable Rule 404(b)'s prohibition on evidence used to show conformity with character. The government maintains that upon Franco's placing of his character in issue, it was required, as part of its case-in-chief, to introduce Franco's prior bad acts in order to prove conduct conforming to a particular character trait. This is because when a defendant uses an entrapment defense, it is the government's burden to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *United States v. Kussmaul*, 987 F.2d 345, 349 (6th Cir. 1993).

when such evidence is offered to rebut an entrapment defense, the trial court is not required to perform a Rule 403 analysis. Although Franco's argument proceeds on the premise that this evidence fell under Rule 404(b), this is not fatal to his claim, for a district court is required to perform a Rule 403 weighing of evidence falling under Rule 404(a) just as it is required to do for evidence falling under Rule 404(b). *See Blaska v. Fuentes*, No. 86-1676, 1988 U.S. App. LEXIS 1683, at *21 (6th Cir. Jan. 6, 1988).

We have explained that a district court ruling on the admissibility of evidence should expressly weigh its probative value and prejudicial effect under Rule 403. *See United States v. Merriweather*, 78 F.3d 1070, 1078 n.1 (6th Cir. 1996) (stating, in the context of evidence proffered under Rule 404(b), that where "the district court did not expressly engage in the Rule 403 balancing, [ ]we simply assume that the court implicitly held that balance favored admission[,] . . . [and] [w]hile we are willing to make this assumption in the absence of an express balancing, we do so reluctantly, and repeat that district courts should make an express determination under Rule 403") (internal citation omitted). Based on the record before us, it does not appear that the district court made an explicit finding that the probative value of the evidence substantially outweighed its prejudicial effect. Even if we presume, however, that the district court failed to properly weigh the evidence under Rule 403, and that such failure constitutes an abuse of discretion, we still find that a new trial is unwarranted.

In *United States v. Abboud*, 438 F.3d 554, 582 (6th Cir. 2006), although the district court failed to properly weigh 404(b) evidence under Rule 403 on the record, because the record did not show that the defendants requested that the district court offer an explanation for its decision, we held that a remand was unnecessary. Although *Abboud* concerned 404(b) evidence, the same analysis regarding the defendant's failure to ask for a Rule 403 explanation applies. The transcript of the pretrial hearing demonstrates that while Franco's attorney harped on the need for prior *notice* of these bad acts pursuant to Rule 404(b), he did not ask the district court judge for an explanation as to why the evidence passed muster under Rule 403. Nor does it appear he demanded such an explanation at trial. Further, from our perspective, the probative value of this evidence—which the government used to rebut Franco's contention that he was not criminally predisposed—was not substantially outweighed by its prejudicial effect. *See United States v. Acosta-Cazares*, 878 F.2d 945, 951 (6th Cir. 1989) ("We conclude, therefore, that the court's failure to set out its probative value/prejudicial effect findings on the record does not require reversal, where defense counsel did not request any balancing, and where review of the record in this case indicates that the evidence was properly admissible."). Therefore, Franco's request for a new trial is denied.

III

Franco argues that his right to confrontation was violated when the trial court "unfairly" limited his cross-examination of government witness Julio Molineiro. *See Coy v. Iowa*, 487 U.S. 1012, 1020 (1988) (noting that the Confrontation Clause implies the right to cross-examine witnesses). The government responds that the trial court acted within its discretion in limiting the extent of Franco's cross-examination. *See Delaware v. Van Arsdell*, 475 U.S. 673, 679 (1986) (explaining that trial judges have broad discretion in limiting the extent of cross-examination to curb concerns such as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). We review the district court's restriction on a defendant's right to cross-examine witnesses for abuse of discretion. *United States v. Middleton*, 246 F.3d 825, 837 (6th Cir. 2001).

In his brief, Franco concentrates on two topics in which his cross-examination of Molineiro was limited: (1) Molineiro's criminal history in South America, and (2) whether the government chose not to prosecute another case in 1992 because the target would have had a successful entrapment defense due to Molineiro's misconduct.

Molineiro's criminal history in South America consisted of five convictions in Chile and one conviction in Paraguay dating from the late 1970s to early 1980s. We find that the district court's limitation on Franco's cross-examination of Molineiro on his criminal background was not an abuse of discretion. Pursuant to Fed. R. Evid. 609(b), evidence of a conviction is inadmissible if more than ten years have elapsed between the date of conviction or release from confinement, "unless the court determines, in the interests of justice, that the probative value of the conviction . . . substantially outweighs its prejudicial effect." Given the staleness of Molineiro's South American convictions, restricting defense counsel from delving into the arguably irrelevant details of these convictions was not an abuse of discretion. Also, notably, defense counsel had the opportunity to elicit from Molineiro on cross-examination, without interruption, the fact he had lied about his number of past convictions.

We also reject Franco's argument that the district court abused its discretion by refusing to allow Franco to question Molineiro regarding the impact his unethical conduct had on a 1992 case where he served as a confidential informant. According to a government report, because Molineiro was an "admitted thief, liar, compromiser of undercover agents and DEA information and a drug user," he was an "embarrassment" to the DEA. An ATF report stated that Molineiro threatened the target and failed to record phone conversations with the target. Because of this improper behavior and the fact that the target was likely going to raise an entrapment defense, it appears that the government chose not to prosecute the target. Franco contends that because of misconduct by Molineiro identical to that in the 1992 case, and because he raised an entrapment defense, his attorney should have been allowed to fully cross-examine Molineiro regarding this earlier case. While the court allowed questioning concerning Molineiro's past instances of misconduct, it did not allow questioning about the 1992 case in a manner that would suggest that Molineiro entrapped the target, finding that it was "all too remote from what the jury has to consider and just confuses it."

Given the identical defenses and similar misconduct by Molineiro in both the 1992 case and Franco's case, the government's reasons for not prosecuting in the 1992 case are arguably relevant to a small degree. However, questioning about this past case could be substantially more prejudicial than probative, as it was likely that the jury would be confused by, or rely too heavily upon, Molineiro's testimony regarding the opinion of a government agent in an unrelated case. Further, the district court allowed defense counsel to question Molineiro on his several past bad acts (such as his theft of government funds while working as a government agent and past drug use), as well as whether he threatened targets of investigations or failed to record conversations. Thus, evidence of Molineiro's prior misconduct was not altogether excluded, and it appears that there was sufficient evidence introduced, and testimony elicited, that would allow the jury to judge Molineiro's credibility.

IV

Franco argues that his trial counsel's performance fell below an objective standard of reasonableness and that but for this deficient performance, there is a reasonable probability that the outcome would have been different. *See Strickland v. Washington*, 466 U.S. 668 (1984). He provides two instances where trial counsel was allegedly ineffective: (1) counsel stipulated to the admission of transcripts of incriminating audiotaped conversations between Franco and agents, yet later objected to their admission as evidence at trial; and (2) counsel stipulated that only one of the one-kilogram packages contained cocaine, yet failed to argue that Franco could only be responsible for possession with intent to distribute one kilogram, rather than nine kilograms.

While Franco's claims might in fact be meritorious, we have generally held that defendants are not permitted to raise ineffective assistance claims on direct appeal because "there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990); *see also United States v.*

*Sanders*, 404 F.3d 980, 986 (6th Cir. 2005). The government submits that Franco may raise his ineffective assistance claim in another section 2255 habeas motion. In reply, Franco contends that the record is sufficient to demonstrate that he was denied effective assistance of counsel. However, he gives no reasons as to why the factual record in this case, which is before us on direct appeal, is sufficiently developed in order to warrant resolution of his claim.

We generally do not review ineffective assistance of counsel claims on direct appeal because "a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel . . . and appellate courts are not equipped to resolve factual issues." *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997). Defendants should bring such claims collaterally pursuant to 28 U.S.C. § 2255 so that an adequate factual record may be developed by the parties. *Id.* While Franco has brought a section 2255 motion before the district court on a prior occasion, that court did not have the opportunity to review these particular ineffective assistance of counsel claims and develop the relevant factual record.[5] As a result, the general rule against ineffective assistance of counsel claims on direct appeal applies here with equal force, and therefore, we abstain from ruling on this issue.

V

Franco argues that although it was undisputed that he possessed one kilogram of cocaine, the possession of the other eight kilograms of sham cocaine cannot be the basis for a conviction under 21 U.S.C. § 841(a)(1). He claims that had he been charged with attempt to possess nine kilograms under 21 U.S.C. § 846, there could have been a sufficient basis for his conviction. However, he argues that he cannot be convicted under section 841(a)(1), because its required elements are (1) knowing, (2) possession, (3) of a *controlled substance*, and it is clear that eight of those kilograms failed to meet this third requirement. Therefore, he believes that no reasonable factfinder could conclude he possessed nine kilograms of cocaine, when the evidence demonstrated that only one of those kilograms was real cocaine. He further contends that because of this alleged error, he received a Guidelines sentence higher than that warranted by the evidence.

Franco appears to be challenging the sufficiency of the evidence upon which his conviction was based, as well as the sentence he received. With respect to the sentence, we find it presents a close question, which we discuss below in Section VI. However, because one kilogram of cocaine is sufficient for a conviction under section 841(a)(1), we fail to see how the eight kilograms of sham cocaine would make any difference. Therefore, we hold that the failure to charge Franco under section 846, or alternatively, the failure to charge Franco with possession with intent to distribute just one kilogram of cocaine, does not warrant a new trial.

VI

Franco also challenges the fact that the jury did not determine the type and quantity of drugs upon which his conviction and sentence are based. The first superseding indictment charged Franco

---

[5]The Eleventh Circuit's decision in *United States v. Hilliard*, 752 F.2d 578 (11th Cir. 1985), is on point. In *Hilliard*, the defendant did not appeal her conviction but later sought habeas relief pursuant to section 2255, alleging ineffective assistance of counsel and failures on the part of the trial court at sentencing. *Id.* at 579-80. The district court rejected her ineffective assistance claims but granted relief on the other ground. *Id.* at 580. After the district court vacated her previous sentence and imposed the same sentence she received before, the defendant brought her direct appeal. *Id.* In her appeal, she raised six allegations supporting her claim of ineffective assistance of counsel. Three of the allegations were raised in the prior section 2255 proceeding, and the other three were raised for the first time on direct appeal. *Id.* The appeals court found that the general rule that ineffective assistance of counsel claims should be relegated to a collateral attack in the district court was inapplicable to Hilliard's first three claims because the record regarding those claims was adequately developed in the district court when she brought her section 2255 motion, and that record was before the court on appeal. However, the appeals court declined to review Hilliard's three additional claims that were not brought before the district court because the record was inadequate with respect to those allegations. *Id.*

with "knowingly, intentionally and unlawfully possess[ing] with intent to distribute approximately nine (9) kilograms of cocaine." However, on the verdict form, the jury simply had the task of checking off guilty or not guilty to the crime of possession with the intent to distribute a controlled substance. Based on this lack of specificity, Franco claims he was denied his right to a jury determination of the type and quantity of drugs he allegedly possessed, resulting in a greater prison sentence than permitted by the jury verdict. He relies on the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was decided subsequent to his conviction and sentence. We have explained that *Apprendi* provides that "a defendant may not be exposed to a greater punishment than that authorized by the jury's guilty verdict." *United States v. Stewart*, 306 F.3d 295, 314 (6th Cir. 2002) (citation omitted).

Franco argues that had the jury found that he possessed with intent to distribute only one kilogram of cocaine, his Guidelines sentence would have been 63 to 78 months — much lower than the 136-month sentence he received. However, we have held that *Apprendi* does not apply to sentences in excess of a particular Guidelines range; rather, so long as a sentence does not exceed maximum penalty authorized by *statute*, there is no *Apprendi* violation. *United States v. Murillo-Iniguez*, 318 F.3d 709, 713 (6th Cir. 2003); *see also United States v. Burns*, 298 F.3d 523, 544 (6th Cir. 2002) ("*Apprendi* 'is not triggered' where the defendant receives a term of imprisonment within the statutory maximum that would have applied even without the enhancing factor (such as the drug amount." (quoting *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000))).[6] Because Franco was sentenced below the twenty-year maximum authorized under 21 U.S.C. § 841(b)(1)(C),[7] there was no *Apprendi* violation.[8]

## VII

Finally, Franco argues that given the fact he was a fifty-year-old first-time offender, the district court may have sentenced him to a below-Guidelines sentence if it had such discretion at the time, rather than sentencing him to the midpoint of his Guidelines range. While we cannot speculate on whether the district court would have sentenced Franco any differently, because Franco's direct appeal was pending when *Booker* was decided, we agree that Franco is entitled to resentencing under *Booker*. *See United States v. Barnett*, 398 F.3d 516, 524 (6th Cir. 2005).

---

[6] As stated above, Franco was sentenced prior to *Apprendi*, and therefore, the maximum sentenced authorized is the statutory maximum. But it should be noted that after *United States v. Booker*, in assessing the use of judge-found facts in cases where sentences were imposed after *Apprendi* but prior to *Booker*, we have held that the maximum sentenced authorized is the maximum Guidelines sentence authorized, not the maximum statutory sentence authorized. Therefore, for sentences imposed during this time frame, there is a Sixth Amendment violation where judge-found facts lead to a sentence greater than the Guidelines sentence authorized by a conviction based on a plea or jury verdict. *See, e.g., United States v. Duckro*, 466 F.3d 438, 443 (6th Cir. 2006); *United States v. Morgan*, 435 F.3d 660, 665 (6th Cir. 2006); *United States v. Davis*, 397 F.3d 340, 351-52 (6th Cir. 2005). This distinction is irrelevant here, as resentencing is required under *Booker*. Because Franco is being resentenced in light of *Booker*, the statutory maximum of twenty years will now serve as the maximum sentenced authorized. *Duckro*, 466 F.3d at 433 n.2.

[7] 21 U.S.C. § 841(b)(1)(B) provides for a maximum sentence of forty years when the quantity of cocaine attributable to the defendant is 500 grams or more. However, when the quantity of cocaine is less than 500 grams, 21 U.S.C. § 841(b)(1)(C) provides that the maximum sentence authorized is twenty years. *See United States v. Garner*, No. 4:01 CR 321, 2005 WL 2133606, *1 (N.D. Ohio Sept. 1, 2005) (explaining the sentencing regime under section 841). Thus, a jury finding that Franco possessed *any* amount of cocaine — no matter how small — was sufficient to warrant a maximum sentence of twenty years.

[8] We also note that when the trial judge gave his instructions to the jury, he read the indictment aloud, which specified the type and quantity of drugs upon which the charges were based. Since the jury's instructions stated the type and quantity of drugs, it is unlikely that the content of the verdict form prejudiced Franco.

For the reasons above, we **AFFIRM** Franco's conviction.  However, we **VACATE** Franco's sentence and **REMAND** for the limited purpose of determining a sentence under the now-advisory Guidelines.