**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0356n.06

**No. 08-1628**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| EARL PAYTON, Jr., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, GILMAN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Earl Payton, Jr., challenges his drug-conspiracy conviction and the 300-month sentence imposed in connection with it. Because Payton entered a knowing and voluntary guilty plea and because he waived his right to appeal his sentence, we affirm Payton's conviction, dismiss his ineffective-assistance-of-counsel claim and dismiss his challenge to his sentence.

I.

In August and September 2007, Payton sold crack cocaine to an undercover federal agent on five separate occasions. Federal agents uncovered 210 grams of crack and 265 grams of powder

cocaine in Payton's apartment, and Payton admitted to packaging and selling drugs from the apartment for approximately six months.

A grand jury indicted Payton on five counts of distributing more than five grams of crack cocaine and one count of conspiring to distribute more than fifty grams of crack. *See* 21 U.S.C. §§ 841(a)(1), 846. In January 2008, Payton pled guilty to the conspiracy charge and waived his right to appeal his conviction and sentence. The district court accepted the plea, and the government honored the agreement by dismissing the remaining five counts.

At Payton's sentencing hearing, the district court calculated Payton's criminal history category (VI) and his offense level (34) based on his status as a career offender, *see* U.S.S.G. § 4B1.1, yielding a guidelines range of 262 to 327 months. This range also reflected a three-level acceptance-of-responsibility reduction, which the government agreed to seek as part of the plea agreement. Payton raised no objections at the hearing, and the district court sentenced him to 300 months.

II.

A.

Payton claims that his guilty plea was unknowing. *See Brady v. United States*, 397 U.S. 742, 748 (1970). The government concedes, and we agree, that Payton's appellate waiver does not cover

this challenge because it goes to the underlying validity of the plea. *See United States v. Gibney*, 519 F.3d 301, 306 (6th Cir. 2008); *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005).

Payton's theory of error is that he accepted the government's plea offer based on a mistaken premise—that he assumed he faced a mandatory life sentence if convicted. There is something to the point, though not enough to vitiate the plea agreement. Section 841 imposes mandatory minimum sentences on repeat drug offenders who "manufacture, distribute, or dispense" substantial quantities of a controlled substance, such as crack cocaine. 21 U.S.C. § 841(a), (b)(1)(A). A defendant with one prior felony drug conviction faces a 240-month mandatory minimum, while a defendant with two or more prior convictions faces a mandatory life sentence. *See id.* § 841(b)(1)(A). These enhanced penalties, however, apply only if the government files an information with the district court listing the previous convictions. *See id.* § 851(a)(1). All of this gives the government a potent plea-bargaining tool: It can promise a sentence below the otherwise applicable mandatory minimum in exchange for a guilty plea.

When Payton pled guilty, he and the government mistakenly assumed he had two prior felony drug convictions. Taking this premise as a given, the government promised, as part of Payton's plea agreement, to file an information listing only one of Payton's prior convictions rather than "enhanc[ing] the mandatory minimum sentence to life imprisonment" by listing the second conviction. Payton, as it turns out, had just one prior felony drug conviction, meaning that he faced a mandatory minimum if convicted of 240 months, not life imprisonment. The apparent source of the misunderstanding was that Michigan authorities charged him with three additional drug-related

felonies in 2005, but he eventually pled guilty to a misdemeanor. *See* Mich. Comp. Laws § 333.7404(2)(a); PSR ¶ 58. As to the instant offense, Payton claims he would not have pled guilty and would not have waived his Fifth and Sixth Amendment trial rights had he known the government never had the option of seeking a mandatory life sentence.

A defendant's guilty plea, like all waivers of constitutional rights, must be knowing and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *United States v. Bradley*, 400 F.3d 459, 463–65 (6th Cir. 2005). A plea bargain that rests on a mutual mistake of fact, particularly one that renders a key promise by the government meaningless, may render a defendant's plea unknowing. *See United States v. Williams*, 198 F.3d 988, 991, 994 (7th Cir. 1999); *cf. United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). Because Payton did not object at his Rule 11 plea hearing or otherwise seek to withdraw his plea before the district court, we review this claim for plain error. *See* Fed. R. Crim. P. 51(b), 52(b); *United States v. Patterson*, 576 F.3d 431, 438 (7th Cir. 2009); *cf. United States v. Puckett*, ___ U.S. ___, 129 S. Ct. 1423, 1429 (2009) (plain-error review applies to breaches of plea agreements).

Even if we assume for argument's sake that Payton did not knowingly plead guilty, his challenge still comes up short. An error is plain only if it "should have been apparent to the [district court] without objection" or seriously affects the "fairness, honesty, or public reputation of" judicial proceedings. *United States v. Henning*, 286 F.3d 914, 920 (6th Cir. 2002) (internal quotation marks omitted); *see Puckett*, 129 S. Ct. at 1429. We cannot fault the district court for failing to uncover, on its own initiative, that Payton's plea hinged on a mutual mistake regarding his criminal history.

The court had no obligation to probe whether Payton benefitted from each promise by the government in the plea agreement, and it thus had no reason to probe his criminal history. *Cf.* Fed. R. Crim. P. 11(b), (c) (listing questions district courts must ask to confirm a plea is knowing). Even then, had the court considered Payton's criminal history, the parties' mistake would not have become apparent at the plea hearing. When enhancing a sentence based on a § 851 information, district courts ask the defendant "whether he affirms or denies that he has been previously convicted as alleged in the information," and probe further only if the defendant denies the listed convictions. 21 U.S.C. § 851(b), (c). Those inquiries would not have uncovered the mistake. And we can hardly expect more of district courts when verifying the accuracy of convictions the government agrees not to disclose. Even if the district court had directly asked Payton whether he had a second felony drug conviction, he still would have answered "yes," as he indeed assumed (inaccurately as it turns out) that he had two prior convictions.

Payton also has not shown that the plea prejudicially affected his substantial rights. *See Puckett*, 129 S. Ct. at 1429. Much like the defendant in *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004), Payton had little to gain by going to trial. His prospects of acquittal were dim given that he made five drug sales to an undercover federal agent and confessed to packaging and selling crack cocaine. *Cf. Dominguez Benitez*, 542 U.S. at 85. Further dimming his prospects of acquittal, federal agents recovered 210 grams of crack from Payton's apartment and personally observed conduct linking Payton to his two co-conspirators, one of whom confessed to selling crack on Payton's behalf on a weekly basis.

Payton, by contrast, had a lot to lose by going to trial. Thirty-nine at the time of his plea, he had already spent over half his adult life in prison. Proceeding to trial likely would have tacked several years onto the 240-month minimum and made it more likely he would spend the rest of his life, or close to it, in the same place. Had Payton forfeited the acceptance-of-responsibility reduction that went with his plea agreement, he would have faced a guidelines threshold of 360 months, *see* U.S.S.G. § 3E1.1 & appl. n.2, which is five years more than his current sentence, eight years above the bottom of the guidelines range under his plea agreement and ten years above the mandatory minimum sentence he hoped for. Having so much to lose and so little prospect of gain, Payton faces an uphill climb in maintaining that he would have pled not guilty if he had known that he never risked a mandatory life sentence. *See Dominguez Benitez*, 542 U.S. at 83. No plain error occurred.

B.

Payton separately challenges his guilty plea on ineffective-assistance grounds. *See Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985). The government concedes, correctly, that Payton's appellate waiver does not cover this challenge. *See In re Acosta*, 480 F.3d 421, 422 & n.2 (6th Cir. 2007). It is nevertheless premature. We generally require federal inmates to wait until they file a § 2255 claim before attacking the performance of their trial counsel—first and foremost because a separate collateral proceeding allows the inmate to develop any factual record that might support his claim. *See United States v. Franco*, 484 F.3d 347, 354–55 (6th Cir. 2007). We stand by that practice today.

C.

Payton also challenges his within-guidelines sentence. Yet he may not attack that ruling here because, as part of his plea agreement, he agreed not to appeal a within-guidelines sentence. *See United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). He urges us to overlook the waiver, but, for the same reasons that his plea remains valid, his appellate waiver remains binding by its terms.

III.

For these reasons, we affirm Payton's conviction, dismiss his ineffective-assistance-of-counsel claim without prejudice and dismiss his challenge to his sentence.