NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0036n.06

Nos. 22-5939, 22-5958, 23-5225

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 26, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| ANTHONY DAVIS (23-5225), KENNETH HICKS (22-5939), and LESTER PAGE (22-5958), | ) ) ) | OPINION |
| Defendants-Appellants. | ) ) | |

Before: SUTTON, Chief Judge; CLAY and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Anthony Davis, Lester Page, and Kenneth Hicks used information and equipment provided by a member of the Memphis Police Department to rob suspected drug dealers. They all pleaded guilty for their roles in this conspiracy but now challenge the judgments against them in this consolidated appeal. Davis claims that his former counsel negligently abandoned his written objections during his sentencing hearing and that the district court should have ruled on those same objections anyway. Page argues that his guilty plea is invalid because it was not "knowing, intelligent, and voluntary" and that his trial counsel and the district court failed to recognize his need for a competency evaluation. Hicks contends that the district court should have considered him a "minor participant" in the conspiracy, eligible for a two-point reduction when calculating his Sentencing Guidelines range. But the district court did not error in sustaining Page's guilty plea or when it sentenced the three defendants. And Davis's and Page's ineffective assistance of counsel claims are premature. We affirm the guilty pleas and sentences

for Davis, Page, and Hicks and decline to consider Davis's and Page's ineffective assistance of counsel claims.

**FACTUAL BACKGROUND**

On July 13, 2018, Davis, Hicks, Page, and several accomplices kidnapped a suspected drug dealer under the guise of a police-initiated traffic stop. They had met the night before to plan out the heist. Hicks and an accomplice dressed in police gear, flashed blue lights from their unmarked black car, and forced the victim out of his car at gunpoint. They drove the victim to a house the conspirators had predesignated at the previous night's meeting. Then, the conspirators tortured the victim while demanding he reveal the location of his contraband. The victim directed Davis and one of the co-conspirators to a storage unit that lacked the contraband they sought. When Davis called to inform Hicks, Page, and the other accomplices at the house of the victim's deception, the victim used the distraction to escape. He jumped out of a window while still handcuffed and with a hood over his head and then received help from a nearby observer. The victim spent a week in the hospital recovering from his kidnapping and escape.

An investigation revealed that since at least 2014, Davis had been obtaining law enforcement equipment and information about suspected drug dealers from a sworn officer of the Memphis Police Department. Davis recruited other individuals to help carry out the robberies and compensated them—and the corrupt officer—with a share of the proceeds. Davis planned six robberies. Page had a role on three occasions and personally inflicted physical harm on the victims during two of those incidents. Hicks got drawn into the conspiracy only for the July 13, 2018 incident, after Davis recruited him to settle an $800 drug debt Hicks owed because of his addiction.

Davis, Page, and Hicks pleaded guilty at different times and were sentenced on an individual basis. Because Davis's, Page's, and Hicks's pleas, sentences, and associated challenges raise distinct issues, we consider the merits of each of their appeals separately.

## ANALYSIS

### I. Anthony Davis

On January 24, 2020, Davis pleaded guilty to conspiracy to violate civil rights, Hobbs Act robbery, and aiding and abetting the deprivation of rights under color of law. Davis's plea agreement contained an appeal waiver stating he agreed "to waive, except with respect to claims of ineffective assistance of counsel or prosecutorial misconduct, his rights to appeal any and all issues related to this case" and he "consent[ed] to the final disposition of the matter by the district court." Prior to sentencing, Davis's counsel filed written objections to the presentence report. But he did not raise any of those objections at the sentencing hearing, and, as a result, the district court did not rule on them. Instead, when the district court asked Davis's counsel if there were any objections to its calculation of the Guidelines range, counsel assured the court "[w]e agree with the accuracy." The district court sentenced Davis to 200 months' imprisonment.

### A. The appeal waiver in Davis's plea agreement precludes our review of his procedural reasonableness challenge.

Davis's primary argument on appeal is that the district court committed a procedural error in failing to rule on his written objections to the presentence report even though he did not raise them during his sentencing hearing. We cannot reach the merits of this argument, however, because Davis waived his right to file such an appeal in his plea agreement.

In pleading guilty, a criminal defendant may waive most rights, so long as they relinquish the right in question knowingly and voluntarily. *Portis v. United States*, 33 F.4th 331, 334–35 (6th Cir. 2022) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)); *but see Portis*, 33 F.4th at

3

335 (providing that plea waivers infected by ineffective assistance of counsel, the government's breach, or race discrimination are unenforceable); *United States v. Caruthers*, 458 F.3d 459, 472 (6th Cir. 2006) ("an appellate waiver does not preclude an appeal asserting that the statutory-maximum sentence has been exceeded"), *abrogated on other grounds by Mathis v. United States*, 579 U.S. 500 (2016). We review the terms of a plea agreement de novo using general principles of contract interpretation to determine whether a defendant waived a specific right. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007).

The appeal waiver within the plea agreement covers Davis's challenge to his sentence. The appeal waiver only allows Davis to mount an appeal or collateral attack based on ineffective assistance of counsel or prosecutorial misconduct. Otherwise, Davis consented to the final disposition of his case by the district court. Reasonably read, the language of the appeal waiver "defers to the district court's discretion" in resolving Davis's objections to the presentence report. *United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012). Therefore, the appeal waiver precludes our review. *Id.*

Davis argues that the district court's purported failure to rule on his written objections amounts to a significant procedural error that falls outside the scope of his appeal waiver. But the district court was under no procedural obligation to rule on the written objections that Davis abandoned at his sentencing hearing. Our precedent interpreting Criminal Rule 32(i)(3)(B) requires the defendant to "actively raise the [disputed portion of the presentence report] during the sentencing hearing" to prompt the district court's duty to rule on the defendant's objections. *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (citation omitted). At his sentencing hearing, Davis conceded the accuracy of the facts in his presentence report and its calculation of the

advisory Guidelines range. Davis cannot reverse course on appeal and re-characterize his own concessions as the district court's procedural error.

## B. Davis cannot bring his ineffective assistance of counsel claim in this direct appeal.

Davis in turn argues that his trial counsel was ineffective for failing to press his written objections to the presentence report and the Guidelines range as calculated by the district court, thereby causing him to receive a longer sentence. As a general rule, we do not resolve ineffective assistance of counsel claims on direct appeal because there usually has not been an opportunity to develop record evidence sufficient to consider the merits of the claim. *United States v. Franco*, 484 F.3d 347, 354–55 (6th Cir. 2007) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)). Davis's claim is no exception.

To get relief, Davis must show that his trial counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Even assuming his trial counsel's performance was deficient, Davis's ability to satisfy the prejudice prong is tied up in the merits of his abandoned written objections. And those objections implicate factual issues that "appellate courts are not equipped to resolve" as a matter of first impression. *Franco*, 484 F.3d at 355 (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)). Accordingly, Davis cannot show prejudice on this record because we have no basis to conclude that his sentence might have been different had his trial counsel advanced his written objections.

## II. Lester Page

Like Davis, Page pleaded guilty to conspiracy to violate civil rights, Hobbs Act robbery, and aiding and abetting the deprivation of rights under color of law. But following that plea and before his sentencing hearing, Page pro se moved for new counsel and asked to withdraw his plea. At a hearing on Page's motion, the court granted Page's request for new counsel while withholding

a ruling on his motion to withdraw his guilty plea. At a subsequent hearing, Page's second lawyer reaffirmed his intention to plead guilty.

The presentence report noted Page's previous mental health diagnoses, substance abuse issues, and lack of educational attainment. Page's mental health diagnoses and intellectual disability were first documented when he was 16 years old. He was diagnosed with schizophrenia and paranoid delusions. He is also intellectually disabled, which prevented Page from completing high school or a GED program. The presentence report notes Page's previous IQ assessment of 73, along with an opinion from the physician who did the evaluation that Page "was fully capable of following the law and functioning in society."

The district court sentenced Page to 324 months' imprisonment for his role in three of the robberies. After Page noticed his appeal of the judgment through his second trial counsel, Page submitted a pro se letter, in which he told the court, "I want to take my plea back," and requested "another lawyer to help me" and direction on "how to file my appeal." Page then filed his appellate briefs through new counsel.

### A. The district court did not commit reversible error in accepting and sustaining Page's guilty plea.

Page argues that he did not enter his guilty plea knowingly and voluntarily and faults the district court for holding him to his plea without sua sponte ordering a competency evaluation. Because Page rescinded his motion to withdraw his guilty plea and never asked for a competency evaluation, we review the district court's decision to accept his plea for plain error. *United States v. Pitts*, 997 F.3d 688, 697 (6th Cir. 2021). The intellectual capacity of a defendant, like Page, to understand the often-complicated terms and consequences of a plea agreement may raise concerns about the validity of a plea agreement. But there was no plain error on the record here.

6

To start, the district court followed Criminal Rule 11 at Page's guilty plea hearing. That rule is designed to ensure a valid guilty plea and requires the defendant to show "'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Young Ko*, 485 F. App'x 102, 104 (6th Cir. 2012) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). At the outset of the plea hearing, the district court provided Page with an overview of what was to come, including an instruction to listen to the government's discussion of the plea agreement and the underlying factual basis for his guilty plea. After the government summarized the plea agreement and the facts of the case, the court informed Page of the significance of his plea, the rights he was waiving in pleading guilty, and the collateral consequences associated with his plea. The court also explained the elements and penalties associated with each of the three counts of Page's guilty plea. The court continued by explaining the advisory Sentencing Guidelines and confirmed that Page had adequately discussed his plea with counsel and was satisfied with his representation. At every turn, Page indicated his understanding. Thus, the sentencing transcript reflects that Page entered a valid guilty plea. *Id.* at 104–05.

Page claims that his subsequent effort to withdraw his guilty plea should have alerted the district court that the plea was invalid. Page is correct that a district court has the constitutional obligation to ensure that a defendant's guilty plea is made "competently and intelligently." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quotation omitted). A proper evaluation is required "where there is substantial evidence of a defendant's incompetency." *United States v. Abdulmutallab*, 739 F.3d 891, 899 (6th Cir. 2014) (citing *Pate v. Robinson*, 383 U.S. 375, 385–86 (1966)). On the other hand, a district court does not err in foregoing such an evaluation without any notice of the defendant's behavior "which would make a reasonable judge question their competency." *Id.* at 900. Neither of Page's trial attorneys brought up his competence at any point

in the proceedings. This creates a strong presumption that the district court did not err in declining to order a competency evaluation sua sponte. *United States v. Miller*, 531 F.3d 340, 349 (6th Cir. 2008) (citing *United States v. Tucker*, 204 F. App'x 518, 520 (6th Cir. 2006)).

Rather than place the district court on notice that it should call for a competency evaluation, the evidence in the record reasonably demonstrated that Page had the ability to consult with his attorneys, engage in colloquies with the district court, and make informed decisions about his plea. *Id.* at 350. Page participated in his guilty plea hearing without any outward display of irrational or erratic behavior. Then, when Page moved the court for new counsel and to withdraw his guilty plea, he provided cogent bases for his filing. And Page's conflict with his first attorney does not require the conclusion that he lacked the capacity to plead guilty. *Id.* at 349 ("a defendant is not rendered incompetent . . . merely because he cannot get along with his counsel or disapproves of his attorney's performance"). The court's next two interactions with Page didn't raise any red flags either. At the hearing where the court allowed Page's first attorney to withdraw, Page personally reaffirmed his desire for new representation and followed his withdrawing attorney's advice to say as little about their conflict as possible. About two months later, Page, through his new counsel, informed the court that "we have moved beyond" the issues with his former attorney that led him to move to withdraw his guilty plea. After that point, Page did not attempt to withdraw his guilty plea again before the district court sentenced him—which occurred nearly three years after his initial plea. At sentencing, the presentence report provided another indicator of Page's competence by noting that a doctor had assessed him as "fully capable of following the law and functioning in

society," notwithstanding his IQ of 73. And Page's behavior at his sentencing hearing did not show that he lacked the competence to sustain his guilty plea.[1]

Finally, Page argues the substance of his plea agreement reveals his incompetence. He argues that a competent defendant would not plead guilty to all counts of an indictment and waive appellate and collateral attack rights in exchange for "no sentencing benefits." Contrary to Page's argument, however, the plea agreement did confer a benefit on him. Specifically, the government agreed to a three-level reduction to Page's Guidelines range for acceptance of responsibility. That three-level reduction made the substance of the plea agreement valid—even if Page only received a minimal benefit. *United States v. Winnick*, 490 F. App'x 718, 721 (6th Cir. 2012). The district court did not plainly error in sustaining Page's plea of guilty to all three counts against him.

## B. The record is insufficient to review Page's ineffective assistance of counsel claim on direct appeal.

Page argues that his trial counsel was ineffective for failing to move for a competency determination, which resulted in the district court accepting an invalid guilty claim. As with Davis, it would be premature for us to review this claim on the existing record, which lacks clear evidence of Page's incompetence and thus eliminates his ability to satisfy the prejudice prong. *See supra* (discussing Davis's similarly premature ineffective assistance of counsel claim). Page's claim of ineffective assistance of counsel is more appropriately raised in postconviction review. *Franco*, 484 F.3d at 355.

---

[1] Page's brief mentions his post-sentencing pro se filing summing up "the issues he had had with his second attorney, his desire to withdraw his plea, and his mental-health concerns." But this filing does not cast doubt on the district court's decision not to order a competency evaluation because Page filed it after his sentencing was already final.

### III. Kenneth Hicks

Hicks pleaded guilty to conspiracy to violate civil rights during the fifth day of his trial. At Hicks's sentencing hearing, the district court sentenced him to 300 months' imprisonment for his participation in the July 13, 2018 kidnapping.

Hicks's sole argument on appeal is that the district court erred by declining to apply a two-level minor participant reduction to his Sentencing Guidelines range. *See* U.S.S.G. § 3B1.2(b). We review the district court's denial of a defendant's request for the minor participant reduction for clear error. *United States v. Mosley*, 53 F.4th 947, 963 (6th Cir. 2022) (citing *United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010)); *see also United States v. Castano*, 906 F.3d 458, 467 (6th Cir. 2018) (providing that we must be left with "a definite and firm conviction that a mistake has been committed" to overturn a district court for clear error (quotation omitted)).

For a sentencing reduction under Guidelines § 3B1.2(b), the defendant bears the burden of proving they were substantially less culpable than the average participant in the conspiracy by a preponderance of the evidence. *Mosley*, 53 F.4th at 963. To determine whether the minor participant reduction applies, a district court may consider the following non-exhaustive list of factors:

> **(i)** the degree to which the defendant understood the scope and structure of the criminal activity;
>
> **(ii)** the degree to which the defendant participated in planning or organizing the criminal activity;
>
> **(iii)** the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> **(iv)** the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> **(v)** the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2, cmt. n. 3(C).

There is evidence against Hicks on all but one of the foregoing factors. Hicks fully understood the scope and structure of the relevant criminal activity; that is, he agreed to commit an armed robbery and kidnapping and that he would use police equipment to do it. Hicks also concedes that he met with his co-conspirators "prior to the robbery to go over the plan." Hicks emphasizes that he did not mastermind the July 13, 2018 robbery, nor did he participate in torturing the victim. But Hicks had an integral role in the scheme as one of the two conspirators who kidnapped the victim while armed and dressed in police clothing and transported the victim to the house where he was tortured. And he was present while his co-conspirators tortured the victim, listening to the "hollering" even if he did not do it himself. Finally, Hicks stood to benefit financially from the criminal activity; even if he would not earn proceeds from the planned robbery like his accomplices, Davis promised to forgive his $800 drug debt. Therefore, while Hicks may have been less culpable than some of his other co-conspirators, the totality of the record provides a reasonable basis to conclude that he was a "run-of-the mill" participant in the July 13, 2018 incident and not entitled to the minor participant reduction. *Mosley*, 53 F.4th at 963.

Hicks further argues that he is entitled to the sentence reduction because his only involvement in the four-year conspiracy occurred on July 13, 2018, and he was not even aware of any of the prior crimes. But the district court did not consider the larger conspiracy in calculating his Guidelines range for his participation in the July 13, 2018 kidnapping. And, likewise, the court did not refer to other incidents when it rejected Hicks's minor participant argument. As we have explained, a defendant who is a minor participant in the overarching conspiracy is not entitled to the minor role reduction if they are only held responsible for the crimes they were actively involved in committing. *United States v. Roberts*, 223 F.3d 377, 380 (6th Cir. 2000) (citing *United States v. Walton*, 908 F.2d 1289, 1303 (6th Cir. 1990)). The July 13, 2018 crime constitutes conspiracy by

itself, and each of the Guidelines range enhancements that informed Hicks's sentence were applied based solely on his conduct in that incident. Therefore, Hicks cannot receive the minor participant reduction simply because he did not participate in the broader criminal scheme. *Id.* at 381 (citing *United States v. Rodriguez de Varon*, 175 F.3d 930, 941 (11th Cir. 1999)).[2]

## CONCLUSION

We AFFIRM the criminal judgments against Anthony Davis, Lester Page, and Kenneth Hicks and dismiss Davis's and Page's ineffective assistance of counsel claims.

---

[2] Though we reject Hicks's minor participant argument, we recognize that his 300-month sentence is similar to or much longer than other members of the conspiracy who planned and committed multiple robberies and facilitated more violent acts and then took plea deals; indeed, it is a functional life sentence. Though Hicks's brief alludes to this disparity and to his significant mitigation evidence, Hicks does not raise a substantive reasonableness challenge to his sentence on appeal, so we do not opine on the propriety of that disparity or whether a functional life sentence represents a proper application of the factors listed in 18 U.S.C. § 3553(a).