NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0154n.06

Nos. 09-2372/10-1768

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Feb 08, 2012

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | )   ON APPEAL FROM THE |
| | )   UNITED STATES DISTRICT |
| v. | )   COURT FOR THE EASTERN |
| | )   DISTRICT OF MICHIGAN |
| WARNER CRIDER, | ) |
| | ) |
| Defendant-Appellant, | )   OPINION |
| | ) |
| | ) |

Before: CLAY and STRANCH, Circuit Judges; BARRETT, District Judge.[*]

**Michael R. Barrett, District Judge.** Defendant Warner Crider appeals the sentence imposed on remand after we reversed the sentence originally imposed. For the reasons set forth below, we AFFIRM.

## I. BACKGROUND

A jury found Crider guilty of conspiracy to possess with intent to distribute and to distribute fifty grams or more of cocaine base, aiding and abetting the distribution of five grams or more of cocaine base, aiding and abetting the possession with intent to distribute and to distribute controlled substances, and felon in possession of ammunition. The government pursued a statutory sentencing enhancement under 21 U.S.C. §§ 841(b) & 851(a) because Crider had been previously convicted of a felony drug offense. At the original sentencing, the district court found that Crider was responsible

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

for 1.5 kilograms of cocaine base, also referred to as "crack cocaine." Under §§ 841(b) and 851(a), this quantity of crack cocaine required a statutory sentence of twenty years to life on the two most serious offenses of conviction. Also, under the 2003 version of the mandatory sentencing guidelines, this drug quantity resulted in a base offense level of 38 under USSG § 2D1.1(c)(1). The court imposed additional guideline sentencing enhancements of eight levels to reach a total adjusted offense level of 46; however, the maximum offense level permissible under the guidelines was 43. With an offense level of 43 and a criminal history category of V, Crider faced a guideline sentence of life imprisonment. The court imposed life terms on counts one and three, 60 months on count six, and 120 months on count seven, all sentences to run concurrently.

During the pendency of Crider's direct appeal, the Supreme Court issued *United States v. Booker*, 543 U.S. 220 (2005). We affirmed Crider's convictions, but we reversed the sentence and remanded for "reconsideration of the sentence pursuant to *Booker*" because we observed that "the record is not clear as to how the district court would have ruled were the Guidelines merely advisory . . . ." *United States v. Crider*, 144 F. App'x 531, 536 (6th Cir. 2005) ("*Crider I*"). We also stated, however, that we found "no error in the calculation of the offense level or criminal history . . . ." *Id.*

Between the date of our remand in August 2005 and the resentencing in October 2009, the Sentencing Commission amended the drug guideline to lower the base offense level for crack cocaine offenses by two levels. After the amendment, a drug quantity of 1.5 to 4.5 kilograms of crack cocaine corresponded to a base offense level of 36, not 38. USSG § 2D1.1(c) (Nov. 2008).

Prior to the resentencing, the parties filed new sentencing memoranda and the probation officer provided the district court with a presentence report under USSG § 1B1.10 showing that the

2

crack-cocaine guideline amendment had no effect on Crider's advisory guideline sentencing range. Even starting with the new base offense level of 36, Crider's total adjusted offense level remained at 43, with a criminal history category of V, resulting in an advisory guideline sentence of life imprisonment on the most serious counts.

At the resentencing hearing, the district court had before it counsel's sentencing memoranda and oral arguments, the two presentence reports, Crider's pro se briefs, and Crider's allocution. Crider argued that the court should conduct a de novo sentencing hearing and recalculate his offense level and criminal history score. He asked the court to find him responsible for a drug quantity of 100 to 200 grams, rather than 1.5 kilograms, and to apply the guideline for cocaine powder instead of crack cocaine. He also argued that a state felonious-assault conviction should not be counted in his criminal-history score because that conviction was relevant conduct to the drug offenses then before the court and including that crime in the criminal-history score would be double-counting. The government opposed Crider's requests, but asked the court to find that Crider was responsible for 4.5 kilograms of crack cocaine rather than 1.5 kilograms, as found at the original sentencing.

Noting that this Court on appeal had found no error in the calculation of the offense level or the criminal-history category, the district court rejected the parties' invitations to revise the drug quantity attributable to Crider from the 1.5 kilograms of crack cocaine found at the original sentencing. The court also refused to change the criminal-history score to remove the points awarded for the state felonious-assault conviction. With regard to the disparity in sentencing between crack cocaine and cocaine powder, the court stated:

> I recognize the court has given me the authority in terms of powder and crack, and I generally agree that disparity is bad policy. There is no basis in the reality of the difference between powder and crack. Powder is a longer high, as I understand it. The crack is a higher high, but for a shorter period, whatever. That's for the chemists to work out.
>
> They are both bad drugs. There's nothing good about powder and there's nothing good about crack.

R. 239, Sent. Tr. at 48. Noting that the guideline range was advisory, the court applied the sentencing factors set forth in 18 U.S.C. § 3553(a), and sentenced Crider to concurrent terms of life imprisonment on counts one and three, and 60 months and 120 months on counts six and seven, respectively.

Crider filed a notice of appeal shortly after the resentencing hearing. The court did not enter the Judgment and Commitment Order until June 2010. Shortly thereafter, Crider filed a second notice of appeal from the judgment, and we consolidated the two appeals.[1]

## II. ANALYSIS

### A.    Standards of Review

We review challenges to the sentencing decisions of the lower courts under a deferential abuse-of-discretion standard for reasonableness. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). We first ensure that the district court did not commit a significant procedural error, such as failing to calculate (or improperly calculating) the guideline range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous

---

[1]Although the district court also entered an order denying Crider a sentence reduction under 18 U.S.C. § 3582(c)(2), we are not certain that Crider made a motion under § 3582(c)(2). In any event, the two pertinent notices of appeal Crider filed related to the sentence imposed at the resentencing hearing and the entry of final judgment following the resentencing.

facts, or failing to explain the chosen sentence adequately. *United States v. Penson*, 526 F.3d 331, 336 (6th Cir. 2008). If a sentencing judge asks the parties whether there are any objections not previously raised, in compliance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), and if a party does not object, then plain-error review applies on appeal to those procedural-reasonableness arguments that were not preserved below. *United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011). In the event we find a sentence is procedurally sound, we then consider the substantive reasonableness of the sentence imposed, also under an abuse-of-discretion standard. *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007).

**B.     Procedural Reasonableness**

Crider challenges several aspects of the resentencing in this case. Through counsel, Crider contends that the district court failed to realize our remand was a general one, that the court erred in determining drug quantity, that the court should have sentenced for powder, not crack, cocaine, and that the court should have removed the state felonious-assault conviction from the criminal-history score. Crider also argues pro se that the district court denied him due process by filing the final judgment eight months after the resentencing hearing, that the court violated his Sixth Amendment rights by having him proceed in part pro se, and that the court erred by not holding a hearing on the question of whether his state conviction could be used to enhance his sentence. We decline to apply plain-error review to any of these arguments because the district court did not ask the *Bostic* question at the close of the resentencing hearing. Consequently, we review for an abuse of discretion.

  *1.  The Scope of the Remand*

  Whether a remand is general or limited is a legal question we review de novo. *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). "Remands for consideration in light of *Booker* are for the purpose of allowing the sentencing court to determine if it would have granted a different sentence, had it known at the time of sentencing that the Sentencing Guidelines were advisory, not mandatory." *United States v. Haynes*, 468 F.3d 422, 425 (6th Cir. 2006). Our cases discussing whether a *Booker* remand is general or limited "have not come to a single conclusion. Instead, they have varied based on the language used and the scope of the action taken by the district court on resentencing." *United States v. Stout*, 599 F.3d 549, 555 (6th Cir. 2010).

  In *Crider I*, our Court expressly stated that "we find no error in the calculation of the offense level or criminal history, but the matter is remanded for reconsideration of the sentence pursuant to *Booker*." *Crider*, 144 F. App'x at 536. While this language may not have been "unmistakable" and may have left some room for doubt as to the scope of the remand, *see United States v. Obi*, 542 F.3d 148, 154 (6th Cir. 2008), we conclude the district court did not err even if it considered the remand to be a limited one based on this Court's statement that there was no error in the original calculation of the offense level or the criminal-history score. The district court recognized the advisory nature of the sentencing guidelines after *Booker*, applied the intervening guideline amendment reducing offense levels for crack-cocaine offenses, applied the § 3553(a) factors, and determined that a life sentence was still appropriate on the most serious convictions.

  If the district court construed our remand as general in nature, there is still no error apparent on the record because the district court allowed the parties to revisit sentencing issues that were

preserved earlier in the case. *See United States v. Franco*, 318 F. App'x 411, 414 (6th Cir. 2009).

The court permitted both parties to argue for a different drug-quantity determination, the court heard

Crider's argument about sentencing disparity between crack and powder cocaine, and the court

entertained Crider's contention that his criminal-history score should be recalculated without the

felonious-assault conviction. The court gave adequate reasons for rejecting each of these arguments.

Moreover, the court was not required to consider issues that had not been raised previously. *See id.*

When Crider raised a challenge to the § 851 enhancement, the Court responded, "You've had years

to provide evidence to this Court of any of the prior convictions not being valid," and, "it's in the

[presentence] report and it wasn't challenged at the time of your sentencing." R. 239, Sent. Tr. at

14, 15.

Whether the district court viewed the remand as general or limited, we can discern no error

requiring reversal. Therefore, Crider's arguments on this point are without merit.

2.       *The Determination of the Drug Quantity*

"[D]istrict courts may, consistent with the Sixth Amendment, find sentencing facts in

applying the now-advisory sentencing guidelines . . . ." *United States v. Vonner*, 516 F.3d 382, 384

(6th Cir. 2008) (en banc). We ordinarily review a district court's factual finding on drug quantity

for clear error. *United States v. Warman,* 578 F.3d 320, 350 (6th Cir. 2009). "A factual finding is

clearly erroneous where, although there is evidence to support that finding, the reviewing court on

the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002) (internal quotation marks omitted).

Crider argued that the court should set his base offense level at 18 for 100 to 200 grams of cocaine, while the government asked the court to find the drug quantity was 4.5 kilograms of crack cocaine. Because the jury found that Crider was responsible for 50 grams or more of crack cocaine, the court found that it was bound to at least that amount and would not adopt the drug quantity proffered by Crider. The court also determined, however, that there was insufficient evidence to support the government's request for an increase to 4.5 kilograms. Accordingly, the court retained the drug quantity it found at the original sentencing: 1.5 kilograms of crack cocaine. The court did not clearly err in determining the amount of cocaine base attributable to Crider for the purposes of sentencing.

### 3. The Cocaine Base to Cocaine Powder Ratio

District courts have the discretion to reject and vary categorically from the crack-cocaine guidelines based on a policy disagreement with those guidelines. *Spears v. United States*, 555 U.S. 261, 264 (2009). While a sentencing court may vary from the crack-cocaine-to-cocaine-powder ratio, applying the ratio does not make a sentence unreasonable under existing law. *United States v. Simmons*, 587 F.3d 348, 366 (6th Cir. 2009); *United States v. Caver*, 470 F.3d 220, 249 (6th Cir. 2006). Resentencing would be appropriate if a sentencing court believed it did not have authority to vary from the crack-to-powder ratio on policy grounds. *See United States v. Johnson*, 553 F.3d 990, 995–96 (6th Cir. 2009).

Here, the district judge heard Crider's extensive arguments on the issue of whether to impose sentence based on cocaine powder. The court acknowledged that it had discretion to vary from the crack-to-powder ratio, but the court exercised its discretion to base the sentence on 1.5 kilograms

of cocaine base. Although the court might have given a more explicit reason for denying Crider's request to predicate the sentence on cocaine powder, the record shows that the court properly considered Crider's arguments and that the court did have a reasoned basis for exercising its decision-making authority. *See United States v. Chiolo*, 643 F.3d 177, 184 (6th Cir. 2011).

### 4. *Prior Conviction and Criminal History Determination*

Crider next argues that the district court erred when it assigned three criminal-history points to the state felonious-assault conviction. At trial, the government elicited testimony about the assault to show that Crider ran the conspiracy with "violence as his trademark." Brief of Appellee at 23. In preparing the 2004 presentence report, the probation officer noted that, because the conviction did not factor into the calculation of Crider's offense level for the drug offenses, it was not properly characterized as "relevant conduct" and criminal-history points were assigned.

Crider relies on *United States v. Walker*, 210 F.3d 373, 2000 WL 353518 (6th Cir. Mar. 30, 2000). In that case, however, we reiterated our previous holding in *United States v. Beddow*, 957 F.2d 1330, 1338 (6th Cir. 1992), that the "proper inquiry is whether the prior sentence and the present offense involve conduct that is severable into two distinct offenses." *Walker*, 2000 WL 353518, at *2. Clearly, that is the case here. Crider's conviction for felonious assault, while occurring during the time span alleged for the drug conspiracy, is distinct from the offenses of which he was convicted in this case. Therefore, the district court did not err in including the offense in Crider's criminal-history calculation.

5.      *The § 851(c) Hearing*

Crider next argues that the district court erred by failing to hold a hearing on his objection to the sentencing enhancement under 21 U.S.C. § 851(c).  As we stated previously, Crider could raise on remand only those issues that he properly preserved earlier in the litigation.  Crider did not object to the sentencing enhancement at his original sentencing or in the first appeal.  Accordingly, the district court was not required to consider it.

6.      *Crider's partial pro se status*

Crider also contends pro se that his Sixth Amendment right to counsel was violated when the district court "ordered" him to proceed partly with counsel and partly pro se.  The record, however, reflects otherwise.

At the hearing on a motion to withdraw filed by Crider's previous counsel, the district court provided that Crider could have an attorney and also "raise whatever issues you want in supplement to what your attorney will raise."  R. 241, Mot. to Withdraw as Counsel Tr. at 11.  The district judge clearly did not order Crider to proceed pro se.  In light of Crider's previous inability to work with four prior attorneys, the district judge allowed Crider the option to file supplemental pro se documents.

The district court appointed counsel from the Federal Public Defender's Office to represent Crider during his resentencing proceeding.  That attorney filed all pertinent pleadings and motions and attended all hearings related to the resentencing, and Crider also made pro se arguments to the court.  Crider presented no evidence to show that the district court erred in allowing Crider to assist in the briefing and arguments related to his resentencing.

For all of the reasons given above, we conclude that the district court's sentence on remand was procedurally reasonable.

## C.    Substantive Reasonableness

"In selecting a sentence, the [district] court must consider the factors set forth in section 3553(a) and arrive at a sentence 'sufficient, but not greater than necessary to comply with' those factors." *United States v. Gunter*, 620 F.3d 642, 647 (6th Cir. 2010) (quoting 18 U.S.C. § 3553(a)). A sentence may be substantively unreasonable "where the district court 'selects the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Moon*, 513 F.3d 527, 543 (6th Cir. 2008) (quoting *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)).

We have no difficulty concluding that the sentence imposed was substantively reasonable. The applicable guideline range was life in prison. The district court applied the § 3553(a) factors and also properly recognized that the sentence should be sufficient, but not greater than necessary to carry out the purposes of sentencing. The court found that Crider's drug conspiracy involved very serious crimes and that Crider's level of involvement in the conspiracy and his prior criminal record were important sentencing considerations. The court further found that Crider posed a danger to the community, and that the sentence imposed would protect the community while deterring others from engaging in similar conduct. The sentence imposed was substantively reasonable.

11

**D.      Delay between the resentencing hearing and entry of judgment**

Finally, Crider contends pro se that the district court deprived him of due process by not entering the Judgment and Commitment Order until approximately eight months after the resentencing hearing.  The "Due Process Clause embraces some minimum expectation of a reasonably timely appeal," but, "unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances," there is no need for further inquiry.  *United States v. Smith*, 94 F.3d 204, 207, 209 (6th Cir. 1996).  While we encourage district courts to enter Judgment and Commitment Orders promptly after sentencing, the delay in this case does not spur us to engage in further review under the Due Process Clause.  Moreover, Crider has not shown prejudice from the delay because he filed two notices of appeal to assure his appellate rights and we have considered all of the contentions he raised on appeal, both through counsel and pro se.  *See id.* at 211.

### III.  CONCLUSION

For all of the foregoing reasons, we conclude that Crider's arguments concerning his resentencing are without merit.  Accordingly, we AFFIRM the sentence of the district court.

**CLAY, Circuit Judge, dissenting.** Following remand in *United States v. Crider*, 144 F. App'x 531 (6th Cir. 2005) ("*Crider I*"), Defendant appeals his sentence of life imprisonment. The majority affirms, but in doing so, goes beyond the scope of our mandate in *Crider I*, and overlooks the district court's failure to adequately resolve Defendant's request for a sentencing variance. For these reasons, as fully explained below, I respectfully dissent.

A.      **Scope of the Remand in *Crider I***

The threshold issue on appeal relates to the scope of our remand order in *Crider I*, which reads as follows in relevant part: "We find no error in the calculation of the offense level or criminal history, but the matter is remanded for reconsideration of the sentence pursuant to *Booker*." *Id.* at 536. The scope of our mandate presents an issue of law that we review *de novo*, *United States v. Hunter*, 646 F.3d 372, 374 (6th Cir. 2011), without deference to the district court's interpretation. *See United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999) (holding that a district court is "bound to the scope of the remand issued by the court of appeals"); *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997).

In this case, we should find that *Crider I* ordered a general remand with a specific limitation—that the district court need not, and could not, reconsider its prior Guidelines calculations. The *Crider I* court expressly stated that it found "no error in the calculation of the offense level or criminal history." 144 F. App'x 536. This language clearly and unambiguously expresses an intent to divest the district court of jurisdiction to revisit issues related to "calculation of the offense level or criminal history." *Id.*; *see United States v. Parker*, 341 F. App'x 122, 124 (6th Cir. 2009) (finding no error in district court's failure to reexamine Guidelines calculations on *Booker*

remand, where the prior appellate decision affirmed the district court's Guidelines calculations and "[n]othing in our remand order compelled that reexamination"); *United States v. Bandy*, 59 F. App'x 611, 614 (6th Cir. 2003) (construing remand order as a general remand with a specific limitation). The majority opinion should not have reached the merits of the district court's drug quantity and criminal history computations; both of those computations were upheld in *Crider I* and were outside of the district court's authority on remand.

### B. Procedural Reasonableness

Where, as here, the district court fails to ask the *Bostic* question, we review the procedural reasonableness of a sentence for an abuse of discretion. *See, e.g.*, *United States v. Chiolo*, 643 F.3d 177, 180 n.1 (6th Cir. 2011). A sentence is procedurally unreasonable if the sentencing court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Bacon*, 617 F.3d 452, 457 (6th Cir. 2010) ("[A] sentence may be deemed procedurally unreasonable if the court fails to explain why it rejected a nonfrivolous request for a different sentence.").

On appeal, Defendant challenges the district court's failure to adequately resolve his request that the court reject or vary from the crack cocaine Guideline in favor of the more favorable power cocaine Guideline based on intervening decisions of the Supreme Court. *See Spears v. United States*, 555 U.S. 261, 265–66 (2009) (per curiam) (holding that "district courts are entitled to reject

and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those guidelines"); *Kimbrough v. United States*, 552 U.S. 85 (2007). In response to Defendant's request, the district court recognized its authority to reject the crack cocaine Guideline, but simply stated that it believed that the crack cocaine and power cocaine Guidelines were bad policy.[2]

The district court, however, failed to make an express ruling on Defendant's request, and to the extent a ruling may be implied from the context, the court failed to adequately explain any implied ruling. The district court at sentencing seemed to possibly agree with Defendant's policy-based arguments as to the disparity, but the conversation soon turned to other topics, and the district court, for reasons unknown, failed to return to and rule upon Defendant's original request. Based on the record, one might fairly speculate that the district court perhaps "misconstrued, ignored, or forgot" about the request altogether. *United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007). Although the district court was "not required to vary or disagree with the crack cocaine guidelines," *United States v. Smith*, 350 F. App'x 54, 57 (6th Cir. 2009), in the absence of any indication in the record that the district court gave meaningful consideration to Defendant's request, or was even aware that the issue apparently remained unresolved, we should remand for resentencing. *See Bacon*, 617 F.3d at 457; *United States v. Robertson*, 309 F. App'x 918, 925 (6th Cir. 2009).

Accordingly, for the reasons discussed herein, I would remand for resentencing.

_____

[2]Specifically, the district court stated: "I recognize the court has given me the authority in terms of powder and crack, and I generally agree that disparity is bad policy. There is no basis in reality of the difference between powder and crack. Powder is a longer high, as I understand it. The crack is a higher high, but for a shorter period, whatever. That's for the chemists to work out. They are both bad drugs. There's nothing good about powder and there's nothing good about crack." (Sent'g Hr'g Tr. 48:10–18, Oct. 8, 2009.)