**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0238n.06
Filed: March 31, 2009

**No. 07-2286**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| ERNESTO FRANCO | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE:** **KEITH, COLE, and McKEAGUE, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Defendant-Appellant Ernesto Franco was arrested by federal agents for drug possession following a reverse sting operation and charged with one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A jury returned a guilty verdict and he was sentenced by the United States District Court for the Eastern District of Michigan to 136 months' imprisonment. After affirming Franco's conviction on appeal, this Court vacated his sentence and remanded to the district court for re-sentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). At re-sentencing, the district court refused to consider Franco's U.S.S.G. § 2D1.1 objection to his previously calculated advisory imprisonment range even as it revised his sentence downward to 120 months' imprisonment. In the instant appeal, Franco challenges the lower court's revised sentencing order.

He claims the district court erred (1) in its application of U.S.S.G. § 2D1.1 by characterizing sham

cocaine, sold to him by undercover operatives, as part of the relevant drug quantity during the initial

sentencing; and (2) by refusing to consider this objection during re-sentencing. For the following

reasons, we **AFFIRM** the district court's revised sentencing order.

### I. BACKGROUND

On March 23, 1995, federal agents arrested Defendant-Appellant Ernesto Franco ("Franco")

through a reverse sting operation in which Franco purchased what he believed to be nine kilograms

of cocaine, contained in nine individually wrapped, one kilogram packages. In reality, an undercover

agent and undercover informant supplied Franco with only one package containing actual cocaine,

while the remaining eight packages consisted of sham cocaine, lacking any trace of a controlled

substance. During the deal, Franco provided an initial payment of $39,546 and informed his

"suppliers" that he was going to return with the remaining balance after he stored the drugs. The

nearly $40,000 was allegedly sufficient to purchase only two kilograms of cocaine at the then-

existing market rate. Franco departed from the sellers with all nine kilograms in his possession and

was arrested shortly thereafter.[1]

Franco was indicted on one count of possession with intent to distribute cocaine in violation

of 21 U.S.C. § 841(a)(1) and later convicted by a jury for that offense on May 28, 1999. In the

Presentence Investigation Report (PSR), the probation officer assigned Franco a total offense level

---

[1]This Court provided a detailed factual account of the events leading up to Franco's arrest in the prior appeal. *United States v. Franco* (*Franco I*), 484 F.3d 347, 349-50 (6th Cir. 2007).

of 32 under § 2D1.1 of the Sentencing Guidelines because he found the offense involved at least five, but less than 15 kilograms of cocaine. *See* U.S.S.G. § 2D1.1(c)(4) (1998).[2] Franco's lack of a prior criminal history led the probation officer to recommend an imprisonment range of 121 to 151 months. The district court ultimately issued a mid-range sentence of 136 months' imprisonment in addition to a mandatory five year term of supervised release.

Franco timely appealed his sentence, but for various reasons the appeal was not heard by this Court until January 30, 2007.[3] He raised several arguments challenging his culpability under 21 U.S.C. § 841(a)(1), all of which the Court denied in affirming the conviction. *Franco I*, 484 F.3d at 351-57. Franco also challenged his sentence based on an alleged denial of a right to jury determination, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and argued the lower court misapplied U.S.S.G. § 2D1.1 in determining his guideline range by including the eight kilograms of separately packaged sham cocaine in the relevant drug quantity used to determine his offense level. Brief for Defendant-Appellant, *Franco I*, 484 F.3d 347 (6th Cir. 2007) (No. 99-2194), 2006

---

[2]Pursuant to 18 U.S.C. § 3742(g), the 1998 edition of the Guidelines, which was in effect at time of initial sentencing, was also applied by the district court during Franco's re-sentencing in October 2007. Section 2D1.1 establishes the base offense level for drug possession violations under 21 U.S.C. § 841(a)(1). U.S.S.G. § 2D1.1, cmt. Statutory Provisions. The drug quantity table located in U.S.S.G. § 2D1.1(c) determines the relevant base offense level based on the type of controlled substance and the amount involved in the offense. *See* U.S.S.G. § 2D1.1(a)(3), (c) n. A.

[3]On June 16, 2000, this Court dismissed Franco's initial attempt at appeal for want of prosecution because of a failure to file a joint appendix. He filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255 in the district court. The district court equitably tolled the statute of limitations, which had already passed, and denied the petition on the merits of Franco's ineffective assistance of counsel claim. On July 14, 2005, he renewed his motion to open his appeal, which this Court granted on November 15, 2005. Notwithstanding the earlier habeas petition, his case remained a direct appeal of his conviction and sentencing when argued on January 30, 2007. *Franco I*, 484 F.3d at 350.

WL 5721960, *15-20. The Court rejected Franco's *Apprendi* argument but did not address the calculation of Franco's guideline range. *See Franco I*, 484 F.3d. at 356-57. Because Franco's direct appeal was still pending when the Supreme Court issued its decision in *United States v. Booker*, the Court vacated his sentence and remanded the case to the district court for "the limited purpose of determining a sentence under the now-advisory Guidelines." *Franco I*, 484 F.3d at 357; *see generally Booker*, 543 U.S. at 245.

During re-sentencing, Franco again argued the lower court misapplied U.S.S.G. § 2D1.1 by including the eight kilograms of separately packaged sham cocaine as part of his relevant drug quantity. The district court refused to consider Franco's argument, deeming the objection "not timely" and implying it went beyond the scope of the *Franco I* remand. Transcript of Re-sentencing Hearing at 5, *United States v. Franco*, No. 95-80248 (E.D. Mich. Oct. 4, 2007) *(*remarking that Franco's re-sentencing was "really [about] allocution"*)*. After weighing the relevant 18 U.S.C. § 3553(a) sentencing factors, the district court revised Franco's sentence downward to 120 months, the statutory minimum. *Id.* at 11. His five year term of supervised release was left undisturbed.

The instant appeal followed on October 9, 2007. Franco claims the district court erred in its application of U.S.S.G. § 2D1.1 during initial sentencing and that it also erred by refusing to consider his objection during re-sentencing. He seeks a remand for re-sentencing under U.S.S.G. § 2D1.1 based on a reduced drug quantity.

## II. ANALYSIS

*A. Scope of the Remand*

Franco argues the *Franco I* remand authorized the district court to re-sentence him de novo and thus enabled the court to revisit his guideline calculation. Appellate courts have the authority to grant either general or limited remands for re-sentencing. *United States v. Orlando*, 363 F.3d 596, 601 (6th Cir. 2004). In the case of a general remand, the district court may re-sentence a defendant de novo, whereas a limited remand restricts the district court's authority "to the issue or issues remanded." *Id.* In other words, a district court is limited by the scope of the remand under which it operates. *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). The interpretation of a remand is a legal issue, which this Court reviews de novo. *See United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003).

In this case, there is little doubt the Court issued a "limited remand" in ordering Franco's re-sentencing. "The difference between the limited mandates and the general mandates is the presence of limiting language." *Id.* at 680. In *Franco I*, we stated our remand was "for the limited purpose of re-sentencing in light of *Booker*." 484 F.3d at 349. We confirmed the narrow scope of the remand later in the opinion by emphasizing it was "for the limited purpose of determining a sentence under the now-advisory Guidelines." *Id.* at 357. Given that we twice stated we remanded with a "limited purpose," the remand cannot reasonably be construed to be general in nature. Such restricting language as was found in our opinion constitutes an "unmistakable" indication that the Court never contemplated a general remand. *See United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999).

The question remains, however, whether Franco's U.S.S.G. § 2D1.1 objection fell within the scope of this limited remand. The government argues it did not, relying upon our statement in

*United States v. Haynes*, 468 F.3d 422, 425 (6th Cir. 2006), that "[r]emands for consideration in light of *Booker* are for the purpose of allowing the sentencing court to determine if it would have granted a different sentence, had it known at the time of sentencing that the Sentencing Guidelines were advisory, not mandatory." The government maintains Franco's U.S.S.G. § 2D1.1 objection plainly falls outside the scope of this limited mandate.

But as we have previously recognized, "*Haynes* offers no support for the proposition that issues related to guidelines determinations-matters that are inextricably linked to the sentencing process-are not properly before the court following a *Booker* remand." *United States v. Nanez*, No. 06-6039, 2007 WL 2386474, *2 (6th Cir. Aug. 21, 2007) (unpublished). *Haynes* merely prohibits a sentencing court from entertaining challenges to a defendant's *underlying conviction* when the prior remand order is limited to re-sentencing in light of *Booker*. *See id*. It does not foreclose the district court from revisiting a defendant's objections to the initial sentencing guidelines computation. *See id*. As indicated by *Nanez*, a *Booker* remand permits a defendant to revisit those sentencing objections properly raised and preserved earlier in the litigation, which have yet to be decided on appeal. *See id*. Notably, the government conceded this very point at oral argument. As a result, the issue for this Court becomes whether Franco adequately raised and preserved his objection to the district court's application of U.S.S.G. § 2D1.1 prior to the *Franco I* remand.

At the re-sentencing hearing held on October 4, 2007, the district court refused to consider Franco's U.S.S.G. § 2D1.1 argument because it found his objection to be untimely.[4] Transcript of

---

[4]The district court judge also implied he would not rule on the objection because it was beyond the scope of the *Booker* remand when he stated that Franco's re-sentencing was "really [about] allocution." Transcript of Re-sentencing Hearing at 5. As suggested herein, the timeliness

Re-sentencing Hearing at 5.  A failure to object on particular grounds at sentencing generally forfeits any challenge to the sentence on those same grounds during appeal, although an appellate court may overlook a defendant's failure to do so.  *See United States v. Wade*, 266 F.3d 574, 585-86 (6th Cir. 2001).  But when a defendant seeks appellate review of an issue underlying a district court's decision, he will not be permanently "barred from reasserting that issue in any subsequent appeals occurring in that case."  *See United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000).  By extension, the defendant would similarly be barred from raising the issue on remand in the district court if he neglected to assert it in the preceding appeal.  Thus, Franco would only be foreclosed from challenging his guidelines calculation during re-sentencing if he had failed to raise the issue in *Franco I*.

Review of the prior appeal reveals that Franco adequately preserved his objection to the relevant drug quantity considered by the district court.   In his brief filed in the prior appeal, Franco specifically argued:

> Significantly, Mr. Franco was not charged with attempting to possess with intent to distribute under 21 U.S.C. §§ 841(a)(1) and 846. Cf. *United States v. Pennell*, 737 F.2d 521 at n.2 (6th Cir. 1984) (upholding conviction for attempt to possess with intent to distribute despite use of *sham cocaine* in reverse sting but emphasizing that that was an attempt case, not one charged under 841(a)(1)). He was charged with actual possession with intent to distribute, a crime requiring the possession of an actual controlled substance. Because *he only actually possessed one kilogram of cocaine, but he was sentence* (sic) *for the possession of nine kilograms, his conviction and sentence must be reversed.*

---

of Franco's objection and the scope of the remand in this case are interrelated and most efficiently addressed together.

> Mr. Franco was unfairly prejudiced [when charged with possession of nine kilograms of cocaine], as he was sentenced pursuant to a guideline range that resulted in a 136 month sentence. But "In calculating the applicable guideline range, the district court was . . . required to consider 'the entire weight of any mixture or substance containing a detectable amount of the controlled substance.(sic)" *United States v. White*, No. 97-6132, 1998 U.S. App. LEXIS 20665 (6th Cir., Aug. 11, 1998) (quoting U.S.S.G. § 2D1.l(c) Drug Quantity Table). *If the district court had started with the offense level specified in U.S.S.G. § 2D1.1 for one kilogram of cocaine*, level 26, Mr. Franco would have had a sentence imposed between 63 and 78 months, and may have already completed his sentence by now.

Brief for Defendant-Appellant, 2006 WL 5721960, at *20 (emphasis added). Franco claimed the district court erred by sentencing him under U.S.S.G § 2D1.1 for possession of nine kilograms of cocaine, when in reality he possessed only one kilogram containing actual cocaine. Thus, he disputed his sentence based on the inclusion of the eight kilograms of sham cocaine sold to him during the reverse sting operation. This is precisely the same argument Franco raised in his objection at re-sentencing, and in the brief he submitted on this appeal.

Although *Franco I* acknowledged Franco's opposition to the lower court's scoring of the eight kilograms of sham cocaine, it never reached the issue before remanding the case. *See Franco I*, 484 F.3d at 355. We specifically limited our discussion of sham cocaine to Franco's separate argument that a jury, rather than the judge, should have determined the type and quantity of drugs upon which his sentence was based pursuant to the Supreme Court's decision in *Apprendi*. *See id.* at 356. Franco's contention that the district court misapplied U.S.S.G. § 2D1.1 in calculating his guideline range, however, represented a distinct basis for challenging his sentence that was not resolved by our *Apprendi* analysis. Thus, Franco's U.S.S.G. § 2D1.1 objection was left undecided in his prior appeal.

Because Franco raised the U.S.S.G. § 2D1.1 objection based on the inclusion of the sham cocaine in his prior appeal and the issue was left undecided by the Court, he was not barred from asserting it at re-sentencing following the *Booker* remand as well as in this appeal. *See McKinley*, 227 F.3d at 718. To find to the contrary would improperly "insulate the district court's guidelines computations from appellate review." *Nanez*, 2007 WL 2386474, at * 2. Therefore, the district court erred in refusing to consider Franco's U.S.S.G. § 2D1.1 objection following the remand for re-sentencing in light of *Booker*.[5]

We are compelled to note that Franco also raised a U.S.S.G. § 2D1.1 objection during initial sentencing. In the presentencing memorandum submitted to the district court, Franco claimed through counsel that the district court improperly applied U.S.S.G. § 2D1.1 by finding that the relevant drug quantity was nine kilograms when the evidence allegedly established that he only had funds to pay for approximately two kilograms. Defendant's Memorandum in Support of Sentencing Submission, *United States v. Franco*, No. 05-80248 (E.D. Mich. Sep. 23, 1999). The ability-to-pay theory, however, arguably represents a different rationale for attacking the district court's application of U.S.S.G. § 2D1.1 than that raised by the Defendant in *Franco I*, where he opposed the guideline calculation due to the inclusion of sham cocaine in his relevant drug quantity. As mentioned above, the consideration of sham cocaine was also the basis for Franco's objection at re-sentencing as well as the argument Franco relied upon in his brief filed in the instant appeal. It was only at oral

---

[5]Given that Franco properly raised and preserved his U.S.S.G. § 2D1.1 objection, we need not decide the separate question of whether the district court would have had discretion to revisit its guideline calculation following the *Booker* remand in the event Franco had *not* raised the issue earlier in the litigation.

argument on the instant appeal did Franco's counsel resurrect the ability-to-pay challenge to the

lower court's application of U.S.S.G. § 2D1.1.

A defendant's failure to object to his sentence before the district court on the same ground

raised on appeal limits subsequent review to plain error. *See United States v. Darwich*, 337 F.3d

645, 655 n. 11 (6th Cir. 2003). But as demonstrated below, Franco's arguments on the merits are

not persuasive, whether the district court's decision is reviewed de novo or only for plain error.

Thus, we need not determine whether Franco materially changed the grounds for his objection such

that the district court's decision would be subject to a more deferential standard of review. It is

sufficient to rule that Franco's U.S.S.G. § 2D1.1 objection was properly raised before the district

court at re-sentencing as well as before this Court in the instant appeal.

*B. U.S.S.G. § 2D1.1 Objection*

Franco contends that a proper application of U.S.S.G. § 2D1.1 would establish a relevant

drug quantity for him of only one kilogram of cocaine. This lesser figure would have reduced his

advisory imprisonment range from 121-156 months to 63-78 months. Franco argues in his brief the

alleged error prejudiced him as he received 120 months' imprisonment.[6]

Appellate courts "generally review[] a district court's drug quantity calculation for clear

error" while "interpretations of the guidelines are legal questions that this Court reviews de novo."

---

[6]It should be noted that Franco completed his imprisonment term on February 8, 2008, while this appeal was pending. This case is not moot, however, because he is still subject to five years of supervised release and his appeal "potentially implicates" the length of that term. *United States v. Maken*, 510 F.3d 654, 656 n. 3 (6th Cir. 2007).

*United States v. Olsen*, 537 F.3d 660, 663 (6th Cir. 2008). Franco's opposition to the lower court's

inclusion of sham cocaine in its relevant drug quantity determination raises a legal argument, which

we find to be without merit. The commentary accompanying U.S.S.G. § 2D1.1 provides in relevant

part:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense . . . . [I]n a *reverse sting*, *the agreed-upon quantity* of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant.

U.S.S.G. § 2D1.1 cmt. 12 ("Note 12") (emphasis added). Note 12, in this respect, makes it plain that

in cases of a reverse sting operation, the relevant figure a sentencing court should consider under

U.S.S.G. § 2D1.1 is the amount of drugs the unsuspecting defendant agreed to purchase because the

defendant's intention to purchase that amount defines the "scale of the offense." We find no

authority in the Guidelines, nor in interpreting case law, that says the relevant drug quantity should

be limited to the actual amount of *genuine* drugs sold. Thus, the presence of fake drugs during such

a reverse sting transaction does not materially diminish the scale of the offense or the severity of the

offender's sentence. *See United States v. Burke*, 12 F. App'x 209, 213 (6th Cir. 2001) (holding

defendant responsible for an agreed purchase amount of 100 kilograms of cocaine even though only

75 kilograms, including 74 kilograms of fake cocaine, were actually delivered).

The dispositive fact in this case is that Franco concedes he agreed to buy nine kilograms of

cocaine from the undercover agent and informant.[7] Given Note 12's focus on the "agreed-upon

---

[7]Franco's PSR states although he agreed beforehand to buy ten kilograms of cocaine, he only took possession of what he believed to be nine kilograms. The distinction make no difference under

quantity," we find Franco's reliance on the fact that only one kilogram of the drugs handed over to him contained genuine cocaine to be misplaced. Indeed, Franco's relevant drug quantity under U.S.S.G. § 2D1.1 would remain unchanged even if the quantities supplied to him were entirely devoid of actual cocaine. Thus, the district court properly applied U.S.S.G. § 2D1.1 in holding Franco responsible for the nine kilograms he agreed to purchase, and which nine kilograms he actually took possession of, believing them to be nine kilograms of cocaine.

At oral argument, Franco's counsel further contended that even though Franco agreed to purchase nine kilograms of cocaine, he should only be held responsible for, at most, $39,546 worth of drugs–which was the dollar amount Franco brought to the sale and which counsel argued was barely enough to purchase two kilograms of cocaine. Relying on Note 12, counsel reasoned that because no significant funds were found by law enforcement on Franco's person nor in his home following his arrest, he could not possibly have "intended" to purchase, nor have been "reasonably capable" of purchasing, all nine kilograms provided to him.[8] Counsel instead theorized that Franco intended to run off with the approximately seven kilograms of cocaine that was fronted him, for which he still owed payment.

---

the Guidelines as the drug quantity table assigns the same base offense level of 32 when at least five kilograms but less than 15 kilograms of cocaine are involved. U.S.S.G. § 2D1.1(c)(4).

[8]Note 12 relevantly states that if the "defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing."

Setting aside our doubts on the merits of this argument, we note as a procedural matter that Franco failed to address this intent/capability argument in the opening brief he submitted on appeal, in addition to eschewing submission of a reply brief altogether. It is well-established that arguments not adequately developed are waived on appeal. *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995). Therefore, we do not find Franco's Note 12 argument a valid basis for disturbing the district court's guideline calculation under U.S.S.G. § 2D1.1.

## III. CONCLUSION

For the foregoing reasons, the district court's amended judgment of sentence is **AFFIRMED**.