NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0251n.06

No. 25-3383

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>DAVID M. SMITH,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Petitioner-Appellee,</td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td></td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td>v.</td><td>)</td><td>COURT FOR THE NORTHERN</td></tr>
<tr><td></td><td>)</td><td>DISTRICT OF OHIO</td></tr>
<tr><td>CYNTHIA DAVIS, Warden,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>    Respondent-Appellant.</td><td>)</td><td>OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

FILED
Jun 04, 2026
KELLY L. STEPHENS, Clerk

Before: COLE, CLAY, and THAPAR, Circuit Judges.

CLAY, J., delivered the opinion of the court in which COLE, J., concurred. THAPAR, J. (pp. 16–17), delivered a separate dissenting opinion.

**CLAY, Circuit Judge.** Warden Cynthia Davis appeals the district court's grant of an unconditional writ of habeas corpus to Petitioner David Smith pursuant to 28 U.S.C. § 2254. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

A more detailed account of the factual background and procedural history in this case can be found in our opinions, *Smith v. Davis*, No. 23-3604, 2024 WL 3596872 (6th Cir. July 31, 2024) and *Smith v. Davis*, Nos. 25-3381/3383, 2025 WL 1826652 (6th Cir. July 2, 2025). For the purposes of the issues before us now, we summarize the relevant facts and procedural history.

On October 16, 2015, Quortney Tolliver ("Tolliver") was attacked with a hammer in her mobile home and then hospitalized because of severe head injuries. *Smith*, 2024 WL 3596872, at

- 1 -

*1. As the police investigated the crime over the course of months, Tolliver maintained that she could not remember any details surrounding the incident. *Id.* at *1-2. The police improperly sought to obtain an identification from Tolliver. *Id.* at *2. In doing so, the police showed Tolliver a photo of Petitioner David Smith ("Smith") and told her that Smith attacked her, he was previously convicted for attempted murder, and he wanted her dead. *Id.* Despite the police's attempts to obtain an identification, Tolliver still could not recall the incident. *Id.* at *3. However, Tolliver eventually told police that, because of a dream that she had about the attack, Smith was the perpetrator. *Id.* The prosecution then presented Tolliver's identification of Smith at the trial in state court, and the jury convicted Smith of attempted murder, felonious assault, aggravated robbery, and aggravated burglary. *Id.* at *1.

After unsuccessfully appealing the trial court's suppression ruling and exhausting his state options, Smith filed a petition for a writ of habeas corpus in February 2020, and the district court denied the petition. *Id.* at *4. Smith appealed, and we held that "Smith was convicted based on an unduly suggestive and coercive single photo identification procedure." *Id.* at *12. As such, we reversed the district court's denial of the writ of habeas corpus and ordered that "the district court issue Smith a writ of habeas corpus unless the State proceeds, within 180 days, to prosecute Smith in a new trial without utilizing Tolliver's identification of Smith, which shall be suppressed and excluded from evidence." *Id.*

The government proceeded to retry Smith. *Smith*, 2025 WL 1826652, at *2. During retrial in February 2025, the government elicited testimony from Tolliver about the attack, including "ask[ing] Tolliver to describe and identify the person she saw outside her house immediately before the attack." *Id.* Tolliver testified that she clearly saw that Smith was the only person outside

her house before the attack, and that after opening the door to let Smith into her house, she experienced the attack. *Id.* The jury then convicted Smith. *Id.*

Soon after, Smith moved the district court to enforce the conditional writ as absolute and order his release, alleging that the state failed to comply with the conditional writ by using Tolliver's identification of him at retrial. The district court found that "the testimony the prosecution elicited from Tolliver leaves no doubt about the effect of her testimony—she identified [] Smith as the person who hit her in the head with [a] hammer." R. 52, Page ID #3909. The district court stated that the "record leaves the [c]ourt with no choice but to conclude that [Smith's] retrial suffers from the same constitutional error the Sixth Circuit identified in his first" trial. *Id.* at 3908. The district court thus granted Smith's motion to enforce the conditional writ as absolute on May 12, 2025. The district court issued an administrative stay that delayed Smith's release for seventy-five days. *Smith*, 2025 WL 1826652, at *2.

Warden Cynthia Davis then appealed the district court's order granting an unconditional writ. *Id.* The warden moved this Court for a complete stay of the district court's order pending the appeal. *Id.* Smith moved this Court to vacate the administrative stay and order his immediate release. *Id.* We resolved those motions on July 2, 2025, denying the warden's motion to stay and granting Smith's motion to vacate the administrative stay. *Id.* at *8. We therefore ordered "the district court to dissolve its administrative stay and effectuate its order releasing Smith from custody, effective immediately." *Id.*

The same day, the district court dissolved its administrative stay and ordered the warden to release Smith from custody. We now turn to the warden's appeal of the district court's order granting an unconditional writ.

## II.   DISCUSSION

The warden argues that the district court's order granting an unconditional writ must be reversed because the district court lacked jurisdiction under 28 U.S.C. § 2254 to issue such an order and because the order violates the Crime Victims' Rights Act, 18 U.S.C. § 3771, *et seq.*  We reject both arguments below.

### A.  Standard of Review

"In habeas proceedings, we review a district court's legal conclusions de novo and its factual findings for clear error."  *Jackson v. Cool*, 111 F.4th 689, 695 (6th Cir. 2024) (citing *Upshaw v. Stephenson*, 97 F.4th 365, 370 (6th Cir. 2024)).  A factual finding is clearly erroneous if we are "left with the definite and firm conviction that a mistake has been committed."  *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation modified).

### B.  Jurisdiction

A conditional grant of the writ of habeas corpus provides the state "with an opportunity to cure their constitutional errors, out of a proper concern for comity among the co-equal sovereigns."  *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006).  "[T]he sole distinction between a conditional and an absolute grant of the writ of habeas corpus is that the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life."  *McKitrick v. Jeffreys*, 255 F. App'x 74, 76 (6th Cir. 2007) (quoting *Gentry*, 456 F.3d at 692).  The district court retains jurisdiction to enforce a conditional writ "until the unconstitutional judgment is gone."  *Gall v. Scroggy*, 603 F.3d 346, 353 (6th Cir. 2010).

The district court's jurisdiction to enforce a conditional writ can be extinguished in two ways.  First, the state's compliance with the terms of the conditional writ extinguishes the district court's jurisdiction.  *Gentry*, 456 F.3d at 692 (citing *Pitchess v. Davis*, 421 U.S. 482, 490 (1975)).

But "[a] federal district court retains jurisdiction to determine whether a party has complied with the terms of a conditional order in a habeas case." *Id.* (citations omitted). "When a petitioner alleges noncompliance with a conditional order, the district court must make a finding concerning the sufficiency of the action that the state has taken pursuant to the district court's mandate, and it must also evaluate the prejudice to the petitioner by any noncompliance." *McKitrick*, 255 F. App'x at 76. "District courts retain jurisdiction to execute their judgments if necessary—in other words, they may change their 'conditional' orders into absolute orders if the state does not fulfill the mandate directed in the habeas court's order." *Id.* "When the state fails to cure the error, i.e., when it fails to comply with the order's conditions, '[a] conditional grant of a writ of habeas corpus requires the petitioner's release from custody.'" *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006) (quoting *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985) (emphasis removed)).

Second, the state's release of the petitioner and vacatur of the unconstitutional conviction extinguishes the district court's jurisdiction. *Eddleman v. McKee*, 586 F.3d 409, 413 (6th Cir. 2009). In determining whether a conviction was vacated, the court considers whether the warden submitted "any proof that [the petitioner's] record was expunged or that the district court or state took any action to actually vacate [the petitioner's] convictions." *D'Ambrosio v. Bagley*, 656 F.3d 379, 388 (6th Cir. 2011). "What vacates a conviction is an entry in the court docket, which—depending on the state's procedures—is likely made through a court order, or clear actions by the court signifying a vacatur." *Id.* Such "clear actions" include a court's statement in an opinion that a petitioner's "conviction and sentences are [v]acated." *Gillispie v. Warden, London Corr. Inst.*, 771 F.3d 323, 329 (6th Cir. 2014). Additionally, "the parties' agreement that a petitioner's conviction has been vacated" establishes vacatur. *See id.* at 329; *see also Eddleman*, 586 F.3d at 412-13. Conversely, a state's indication that it chose to proceed "with the retrial option afforded

under the conditional writ issued by the [d]istrict [c]ourt" "counsels against finding" that a conviction was "vacated." *D'Ambrosio*, 656 F.3d at 387. And the court's mere use of "the term 'vacate' in reference to . . . prior convictions is not enough." *Id.* Where the evidence in the record does not support a finding that, under the totality of the circumstances, the state vacated the petitioner's conviction, "the district court continue[s] to retain jurisdiction over [the petitioner's] case." *Id.* at 388.

### 1. Compliance with the Conditional Writ

The warden contends that the state complied with the terms of the conditional writ, which divested the district court of jurisdiction.

The district court held that the warden "waived any argument that the prosecution complied with the spirit of the writ" because the warden "offered no authority supporting such a contention," and the district court "discern[ed] no basis for such a claim on this record." R. 52, Page ID #3910. "It is well-established that arguments not adequately developed are waived on appeal." *United States v. Franco*, 318 F. App'x 411, 418 (6th Cir. 2009).

But, in any event, the district court still reviewed the record and determined whether the state complied with the terms of the conditional writ. The district court highlighted various points of Tolliver's testimony at retrial: the government "asked Tolliver to describe the person she saw arrive at her house and to identify him for the jury," to which Tolliver identified Smith; then the government "asked Tolliver a series of questions underscoring her ability to perceive the person at her door and emphasizing that she saw only one person at her door," who was Smith; and then Tolliver testified that she experienced the attack right after she opened the door to let Smith into her house. R. 52, Page ID #3905-08. The district court found that the "record leaves no doubt that Tolliver identified [] Smith as her attacker. Indeed, that was the point of the testimony." *Id.* at

3908. The district court emphasized that the government's opening and closing arguments at retrial further illustrated that the government elicited Tolliver's testimony to identify Smith. In opening argument, the government stated:

> Quortney will tell you that David let's [sic] her know that he arrives and that he's at the trailer park and that they're planning to go. Then she hears a knock at her trailer, that she opens the door. She sees David. And more importantly, she'll tell you she sees no one else, nobody but David Smith. Then she opens the door, or he opens the door, and she turns to get her shoes on and she is struck from behind by what investigators later believe is a hammer in the back of her skull.

*Id.* at 3909 (quoting R. 41-1, Page ID #3191). In closing argument, the government also stated:

> And, again, don't miss the big elephant in the room, Quortney Tolliver's own testimony. The last person she saw, the person she was gonna do a deal with, the person that she opens the door for or he opens the door, and then she wakes up in a hospital almost beaten to death.

*Id.* at 3908 (quoting R. 43-1, Page ID #3626-27). The district court thus found that "it is difficult to see how this record arguably complies with the Sixth Circuit's mandate that [] Smith's retrial proceed 'without utilizing Tolliver's identification of Smith, which shall be suppressed and excluded from evidence.'" *Id.* (quoting *Smith*, 2024 WL 3596872, at *12).

The district court properly concluded that the state did not comply with the terms of the conditional writ. Before the police's suggestive identification procedure, Tolliver maintained that she had no memory of the day of the attack. *See Smith*, 2024 WL 3596872, at *1-2. We thus unequivocally mandated that "the district court issue Smith a writ of habeas corpus unless the State proceeds, within 180 days, to prosecute Smith in a new trial without utilizing Tolliver's identification of Smith, which shall be suppressed and excluded from evidence." *Id.* at *12. The government then elected to retry Smith but failed to suppress and exclude Tolliver's identification of Smith. Instead, as the district court found, the government elicited Tolliver's testimony that she

clearly saw Smith outside her house before the attack, he was the only person outside of her house in the moments before the attack, and after the door opened to let Smith into her house, she experienced the attack. As further highlighted by the district court, the government's opening and closing arguments demonstrate that Tolliver's testimony identified Smith.

The warden fails to show that the district court erred in making those findings, let alone clearly erred. *See Easley*, 532 U.S. at 242. The warden contends that Tolliver's testimony was permissible because "Tolliver never testified during the retrial that Smith was her attacker." Appellant's Br. at 25. But the government's opening and closing arguments at retrial confirm as such. And, regardless, we did not articulate such a limitation in our mandate. Instead, we mandated that if the state pursues a retrial of Smith, it must do so "without utilizing Tolliver's identification of Smith." *Smith*, 2024 WL 3596872, at *12. In other words, the conditional writ prohibited the government from introducing at retrial any evidence involving Tolliver's identification of Smith, regardless of whether she testified specifically that he was her attacker. By eliciting at retrial Tolliver's testimony identifying Smith, including describing Smith as the only person outside her house in the moments before the attack and her last memory before the attack being opening the door to let Smith into her house, the state "fail[ed] to comply with the order's conditions" and thus "fail[ed] to cure the error" of the unconstitutional conviction. *See Satterlee*, 453 F.3d at 369.

Because the state failed to comply with the terms of the conditional writ, the district court retained jurisdiction to change the conditional writ into an absolute writ, *see McKitrick*, 255 F. App'x at 76, and Smith's "release from custody" was required, *see Satterlee*, 453 F.3d at 369. The district court's jurisdiction thus was not extinguished by the state's compliance with the terms of the conditional writ in this case.

### 2. Vacatur of the Unconstitutional Conviction

The warden contends that the state vacated Smith's prior unconstitutional conviction and released him, which extinguished the district court's jurisdiction.

The district court found that the "[s]tate trial court did not vacate [] Smith's conviction from 2016." R. 52, Page ID #3895. The district court based this determination on a series of findings in the record, including that "no vacatur appears on the docket," "no arraignment occurred," "Smith was not re-arrested," "no evidence of an agreement by the parties that the first conviction was vacated appears in the record," and "the prosecution and the [s]tate trial court acted as if the prior conviction was not vacated." *Id.* at 3896.

The district properly concluded that the state did not vacate Smith's prior unconstitutional conviction. As recognized by the district court, the parties in this case have not "agreed" that Smith's conviction was vacated. *See Eddleman*, 586 F.3d at 412. Nor is there any "entry in the court docket" signifying vacatur. *See D'Ambrosio*, 656 F.3d at 388; Appellant's Br. at 13 ("It is true that the trial court did not enter upon its docket any order of vacatur of Smith's initial conviction before proceeding with the retrial."). The warden has not submitted "any proof" that Smith's "record was expunged" or that "the district court or state took any action to actually vacate [Smith's] convictions." *See D'Ambrosio*, 656 F.3d at 388. Rather, as the district court noted, the state sought to retry Smith within 180 days in accordance with the retrial option in our mandate. And the state's choice to proceed "with the retrial option afforded under the conditional writ issued by the [d]istrict [c]ourt" "counsels against finding" that a conviction was "vacated." *Id.* at 387.

The warden argues that, despite the lack of any entry in the docket signifying vacatur, the "transcript of the court's initial pre-trial hearing reveals the prosecutor's understanding that this Court's order had 'reversed' Smith's initial conviction, indicating the belief that the conviction

was already vacated by this Court." Appellant's Br. at 13. The warden references the following statement by the government:

> I think at this point, to be safe, there is a journal entry of July 31st reversing the case, remanding it back for trial from the Sixth Circuit Court of Appeals for the United States and that would give us approximately the end of January 2025. So, using that, I believe we're going to tentatively set a commencement, or a trial start date, selecting a jury on January 22nd, that's a Wednesday, 2025, and beginning the trial then.

R. 47-4, Page ID #3796. But this statement by the government does not establish vacatur. To begin, the government did not use the word "vacate," and even if we were to equate "vacate" with "reverse," the mere use of "the term 'vacate' in reference to . . . prior convictions is not enough." *D'Ambrosio*, 656 F.3d at 387. Moreover, rather than signal vacatur, this statement further illustrates the government's clear intention to proceed with the retrial option of the conditional writ, as the government recognized that our July 2024 mandate allowed 180 days to retry Smith and ensured that retrial would begin within that time frame in January 2025. Again, the decision to proceed "with the retrial option afforded under the conditional writ issued by the [d]istrict [c]ourt" "counsels against finding" that a conviction was "vacated." *Id.*

The warden also claims that Smith's transfer from state prison to county jail, along with the setting of bond and a retrial date, established that Smith's first conviction was vacated. In support of this contention, the warden relies on a series of cases, all of which are distinguishable from this case. We address each case in turn.

In *Eddleman*, we concluded that the "record ma[de] clear . . . that [the petitioner's] conviction was vacated" because "counsel for both [the petitioner] and the [s]tate represented to the court, and the court itself agreed, that [the petitioner's] unconstitutional conviction had been vacated," and the petitioner "was later rearraigned and afforded a bond hearing in state court." 586

F.3d at 412. It is true that the setting of bond informed the determination of whether vacatur occurred in *Eddelman*. But we assess whether a conviction was vacated under the "totality of the[] circumstances." *D'Ambrosio*, 656 F.3d at 388. And, unlike in *Eddelman*, both parties have not represented to any court that Smith's conviction was vacated, no court has agreed that Smith's conviction was vacated, and Smith was never rearraigned, as the district court found in this case. Resultingly, this case does not present the circumstances that warranted the finding that vacatur occurred in *Eddelman*.

In *Gillispie*, we held that a state court opinion, which stated that the petitioner's "conviction and sentences are [v]acated" constituted "indisputably" that "clear actions" signified vacatur. 771 F.3d at 329. Unlike in *Gillispie*, as conceded by the warden, no statement in any opinion or docket entry articulates that Smith's conviction was vacated. Therefore, the warden's reliance on *Gillispie* to establish vacatur in this case is also unavailing.

In *Pitchess*, the petitioner filed a petition for habeas corpus based on the police's failure to turn over an exculpatory laboratory report. 421 U.S. at 483. The district court issued a conditional writ of habeas corpus, which compelled the state to release the petitioner, unless the state provided the petitioner "with the laboratory report and moved to retry him within 60 days." *Id.* The state complied with the conditional writ, moving to retry the petitioner "in accordance with the terms of the conditional writ," including turning the laboratory report over to the petitioner before trial. *Id.* at 484. Prior to retrial, the petitioner filed a motion in the district court to modify the conditional writ and "replace it with an order granting an absolute writ and enjoining any retrial on the pending state charges," based on a new issue – the destruction of physical evidence. *Id.* at 485. The district court held a hearing and eventually granted the motion. *Id.* The Supreme Court reversed, finding that "the unavailability of the physical evidence . . . was never raised . . . during the proceedings

resulting in issuance of the conditional writ of habeas corpus." *Id.* at 487. The Court thus held that the district court was not permitted "to maintain a continuing supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court," and the petitioner must first exhaust state court remedies to obtain habeas relief based on the newly raised issue. *Id.* at 490.

*Pitchess* is entirely inapplicable to this case, let alone the determination of whether vacatur occurred. To begin, the Court did not discuss whether the petitioner's prior conviction was vacated in *Pitchess*, so the case does little to inform our determination here. Moreover, unlike in *Pitchess*, the state did not comply with the terms of the conditional writ in this case. While the state in *Pitchess* fulfilled the conditions in the writ by turning over the laboratory report when proceeding to retrial, the state in this case did not fulfill the conditions of the writ because, as established above, the state did not exclude Tolliver's identification of Smith when proceeding to retrial. Further, unlike in *Pitchess*, Smith did not file a motion to modify the conditional writ and replace it with an absolute writ based on a new issue that was never discussed during the original habeas proceedings. Rather, Smith filed a motion to enforce the conditional writ based on the state's failure to comply with the precise terms of the conditional writ issued by the district court. Our caselaw is clear that the district court retains jurisdiction in that situation. *See*, *e.g.*, *D'Ambrosio*, 656 F.3d at 386 ("[T]he state never complied with the conditional writ . . . and the district court retained jurisdiction over it."). Because the district court in this case did not grant the unconditional writ based on a newly raised issue unrelated to the original habeas proceedings, the district court did not "continu[e] supervision over a retrial conducted pursuant to a conditional writ granted by the habeas court," as in *Pitchess*. 421 U.S. at 490. *Pitchess* thus cannot support a finding of vacatur in this case.

Lastly, in *Fisher*, the district court issued a conditional writ which was "stayed for ninety [] days pending appeal by respondent or, within which time, the [s]tate may on its own motion vacate petitioner's conviction and grant him a new trial." 757 F.2d at 790. Around nineteen months after that order, the petitioner moved to enforce the conditional writ, "citing the state's failure to retry or release him within ninety days." *Id.* The district court ordered that the petitioner be immediately released and enjoined the state from further prosecution of the petitioner. *Id.* at 790-91. This Court reviewed for abuse of discretion the district court's order barring retrial and discharging the petitioner from custody. *Id.* at 791. This Court recognized that "[a] conditional grant of a writ of habeas corpus requires the petitioner's release from custody if new proceedings are not commenced by the state within the prescribed time period" but "the state is not precluded from rearresting [the] petitioner and retrying him under the same indictment." *Id.* (citations omitted). This Court highlighted that "the state had appointed counsel for [the petitioner], set bond, and set a trial date." *Id.* This Court found that those "facts indicate[d] that . . . [the petitioner] was no longer in custody pursuant to the constitutionally defective judgment of conviction, but was being held pursuant to the indictment." *Id.* This Court therefore concluded, not that the district court lacked jurisdiction due to the vacatur of a prior conviction, but "that the district court abused its discretion in barring retrial by the state." *Id.*

*Fisher* again is inapplicable to this case and does not establish that vacatur occurred here. In *Fisher*, this Court did not address whether the district court's jurisdiction had been extinguished due to the vacatur of a prior conviction. Further, unlike in *Fisher*, the district court in this case did not bar retrial while the state was proceeding to retry Smith. Nor are we reviewing the merits of such an order for abuse of discretion.

Even if we were to ignore that *Fisher* did not deal with jurisdiction, it is not clear under the facts of this case that Smith "was no longer in custody pursuant to the constitutionally defective judgment of conviction," as in *Fisher*. *See* 757 F.2d at 791. Although a retrial date and bond were set in this case, the "warrant for removal" requiring the transfer of Smith from state prison to county jail prior to retrial indicates that Smith's unconstitutional conviction was not vacated. *See* R. 43-1, Page ID #3317. As noted by the district court, every provision of state law listed in the warrant for removal "refers to a convicted felon and applies to the housing and transportation of a person following a conviction for a felony," and no provision refers to "a person's custody following indictment, pending trial, or before a conviction." R. 52, Page ID #3893-94. The warden attempts to explain away the language in the warrant for removal as a "ministerial error made by the clerk." Appellant's Br. at 16. But "[s]tatements of confused parties and judges do not vacate convictions." *D'Ambrosio*, 656 F.3d at 388.

Neither *Fisher* nor any other case cited by the warden guide us to conclude that the circumstances in this case involve "clear actions by the court signifying a vacatur." *See D'Ambrosio*, 656 F.3d at 388. Nor has the warden demonstrated that the district court clearly erred in its findings. *See Easley*, 532 U.S. at 242. The district court's jurisdiction thus was not extinguished by the state's vacatur of the unconstitutional conviction in this case.

### C. Crime Victims' Rights Act

The warden contends that the district court's order granting an unconditional writ violated the Crime Victims' Rights Act, 18 U.S.C. § 3771, *et seq*. The Act provides a "crime victim" with certain rights, including the "right to be reasonably heard at any public proceeding in the district court involving release." 18 U.S.C. § 3771(a)(4).

As Smith points out, the warden's claim under this Act features multiple defects. First, the Act states that, in a federal habeas corpus proceeding, those "rights may be enforced by [t]he crime victim or the crime victim's lawful representative." *Id.* § 3771(b)(2)(B)(i). The crime victim in this case, Tolliver, is not participating or represented in this lawsuit, and she has not asserted any rights under the Act. Under the plain language of the Act, the warden may not enforce the rights of the crime victim in this case.

Additionally, even if the warden may enforce the rights of crime victim in this case, the warden has not followed the requisite procedure for doing so under the Act. 18 U.S.C. § 3771(d)(3) sets forth the procedure for asserting rights under the Act. The rights shall first "be asserted in the district court" and that court "shall take up and decide any motion asserting a victim's right forthwith." *Id.* Then, "[i]f the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." *Id.* In this case, neither the warden nor any other party moved the district court to decide whether Tolliver's rights were violated under the Act. In fact, no party made any mention of this issue before the district court. Moreover, no party has petitioned this Court for a writ of mandamus. Instead, the warden improperly raises this claim for the first time on appeal.

The warden did not address any of these procedural issues. We therefore have no basis to conclude that the district court's unconditional writ violated Tolliver's rights under the Act.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.

THAPAR, Circuit Judge, dissenting. The majority again engages in "a severe and unprecedented intrusion onto state sovereignty." *Smith v. Davis*, Nos. 25-3381/3383, 2025 WL 1826652, at *9 (6th Cir. July 2, 2025) (Thapar, J., dissenting). It affirms the grant of a writ of habeas corpus to David Smith, a violent criminal who is factually guilty of attempting to murder a woman by bludgeoning her with a hammer and leaving her unconscious on the floor. And it does so even though the district court lacked jurisdiction to order that extraordinary relief.

The district court first granted Smith a conditional writ of habeas corpus. That conditional writ provided Ohio "with an opportunity to cure [the] constitutional errors" at Smith's first trial by re-trying him without allowing the victim to identify him as her attacker. *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006). When the district court granted that conditional writ, it retained jurisdiction only "until the unconstitutional judgment [was] gone." *Gall v. Scroggy*, 603 F.3d 346, 353 (6th Cir. 2010). That's because federal courts have jurisdiction to entertain habeas petitions only from individuals confined "pursuant to the judgment of a State court." 28 U.S.C. § 2254(a); *Eddleman v. McKee*, 586 F.3d 409, 412–13 (6th Cir. 2009). So if the unlawful judgment against Smith disappeared, federal jurisdiction over his habeas petition would disappear too. *Eddleman*, 586 F.3d at 413.

Two circumstances can erase an unlawful state-court judgment, thus divesting a district court of jurisdiction. As I've previously explained, both exist here. First, a district court loses jurisdiction if the state vacates the unconstitutional conviction. *Id.* Although Ohio didn't explicitly state it was vacating Smith's first conviction, we know that it did so based on the totality of the circumstances. *See D'Ambrosio v. Bagley*, 656 F.3d 379, 387–88 (6th Cir. 2011). The State transported Smith from prison to jail, gave him a re-trial, and set bond. *Smith*, 2025 WL 1826652, at *11–15 (Thapar, J., dissenting). And those factors indicate a prisoner is "no longer in custody

pursuant to the constitutionally defective judgment of conviction." *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985). So too here. Second, a district court loses jurisdiction when the state complies with the conditional writ. *Gentry*, 456 F.3d at 692. And Ohio did that too by re-trying Smith without using the victim's identification of him as her attacker. *Smith*, 2025 WL 1826652, at *15–19 (Thapar, J., dissenting). In short, because Smith was no longer in custody pursuant to an unlawful state-court judgment once Ohio vacated his conviction and re-tried him, the district court lacked jurisdiction to grant habeas relief.

But instead of recognizing these jurisdictional limits, the majority permits the district court to "maintain a continuing supervision over [Smith's] retrial," which far exceeds the role of federal courts. *Pitchess v. Davis*, 421 U.S. 482, 490 (1975). As a result, I respectfully dissent from the majority's decision to grant a writ of habeas corpus to a twice-convicted attempted murderer.